Clerk
District Court

NOV 0 4 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  ERIC S. SMITH, Bar No. F 0157
   SMITH & WILLIAMS
2  Attorneys at Law
   P.O. Box 5133 CHRB
3  Saipan MP 96950
   Tel:    233-3334
4  Fax:    233-3336

5  Attorneys for Plaintiff

6

7

8          IN THE UNITED STATES DISTRICT COURT
                      FOR THE
9           NORTHERN MARIANA ISLANDS

10                                              **0035**

11 ALAN STUART MARKOFF, D.D.S.dba       CIVIL ACTION NO. CV-05-_____
   TOOTHWORKS and OPEN CHOICE,

12              Plaintiff,

13         vs.                          **COMPLAINT AND DEMAND
                                           FOR JURY TRIAL**
14

15 TODD KEITH JOHNSON, D.D.S.

16              Defendant.

17              __Jurisdiction and Venue__

18 1.   Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332

19      (diversity of citizenship).

20 2.   Plaintiff and Defendant are citizens of the United States.

21 3.   The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

22 4.   Because the CNMI is the venue in which Plaintiff currently resides as well as the

23      place where the tortious injury occurred, and because the Defendant is subject to

24      personal jurisdiction therein, venue is properly placed in the CNMI pursuant to 28

25      U.S.C. §1391.

26

27

28

***PARTIES***

5.  Plaintiff Alan Stuart Markoff is a citizen of the United States and a resident of Houston, Texas doing business in the island of Saipan, Commonwealth of the Northern Mariana Islands.

6.  Defendant Todd Keith Johnson is a citizen of the United States and a resident of the state of Oklahoma.

7.  Plaintiff and Defendant entered into a contract for the purchase and sale of Defendant's dental practice in Saipan, CNMI. Defendant at the time of the purchase, was a resident of Saipan, CNMI.

***FACTS***

8.  On September 16, 2004, Defendant and Plaintiff entered into an *agreement for the purchase and sale of Defendant's dental practice* in Saipan, CNMI. *See* Exhibit 1.

9.  The dental practice was called Todd Keith Johnson dba Toothworks and Open Choice.

10.  The agreement called for the payment of Plaintiff of five hundred twenty-five thousand dollars ($525,000.00) to Defendant.

11.  Plaintiff paid Defendant four hundred thousand dollars ($400,000.00) and signed two promissory notes. One in the amount of fifty thousand dollars ($50,000.00) plus interest, and the second in the amount of seventy-five thousand dollars ($75,000.00).

12.  On December 15, 2004, Plaintiff entered into a consulting agreement with Defendant calling for Defendant to act as consultant to Plaintiff in exchange for a consulting fee of one thousand four hundred fifty dollars ($1,450.00) per month for sixty (60) months. *See* Exhibit 2. Plaintiff has made three payments to Defendant pursuant to this agreement.

13. At the time when Plaintiff and Defendant were negotiating for the sale of Defendant's dental practice, Defendant showed Plaintiff documentation and statements which Defendant represented as accurate.

14. These documentation included history of deposits made by customers to Defendant's dental practice and other corporate records.

15. Plaintiff's decision to purchase the dental practice was largely due to his reliance upon the accuracy of the amounts of the deposits made by customers and Defendant's representations that the deposits made to Defendant's two accounts reflected the cash flow made by patients and customers of Toothworks and Open Choice.

16. Since Plaintiff took over the dental practice, Plaintiff has learned that the statements made by Defendant were false and the documents provided did not accurately reflect the deposits made by patients and customers. The amount stated in the consolidated deposits was overstated by approximately 25%.

17. As a result of the overstatement, the true revenue deposits was at least 25% less than represented and the value of the business was at least equally reduced.

18. In the written **Agreement for the Purchase and Sale of a Dental Practice**, executed by Plaintiff and Defendant on September 16, 2004, Exhibit 1, Defendant warranted that the financial information provided to Plaintiff was correctly and properly prepared in accordance with generally accepted accounting principles and the contents of financial information correctly reflected and fairly presented the financial affairs of the business.

19. Through an examination of Defendant's records by an accountant, Plaintiff has learned that accepted accounting principles were not followed and that the contents of the financial information did not correctly reflect the financial affairs of the business.

3

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

20. Plaintiff incorporates paragraphs 1 to 19 as if fully set forth herein.

21. Plaintiff and Defendant were parties to an enforceable contract and had obligated themselves under the contract.

22. The contract in question was valid and enforceable.

23. Plaintiff performed the contract in each and every respect.

24. Defendant breached the contract in that he failed to perform on his warranty that the financial information provided to Plaintiff was correctly and properly prepared in accordance to generally accepted accounting principles and the contents of financial information correctly reflected and fairly presented the financial affairs of the business.

25. Defendant's failure constitutes a breach of the contract, which breach was material because Defendant did not substantially perform a material obligation required under the contract.

26. As a result of Defendant's breach, Plaintiff has been damaged in the amount exceeding $117,500.00.

## SECOND CAUSE OF ACTION
## FRAUD AND MISREPRESENTATION

27. Plaintiff incorporates paragraphs 1 to 26 as if fully set forth herein.

28. Defendant submitted inaccurate documentation and records to Plaintiff which induced Plaintiff to purchase the dental practice for an amount in excess of its true and fair market value.

29. Defendant also falsely represented to Plaintiff that the financial information provided to Plaintiff was correctly and properly prepared in accordance to generally accepted accounting principles and the contents of financial information correctly reflected and fairly presented the financial affairs of the business.

4

30. Defendant made these representations with the intent to induce reliance on his representation even though he knew that his representations were false.

31. As a result, Plaintiff justifiably relied on Defendant's representation and purchased Defendant's dental practice for more than its fair market value.

32. Defendant's misrepresentations caused Plaintiff injury and damages in the amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

33. Plaintiff incorporates paragraphs 1 to 30 as if they are fully set forth herein.

34. Defendant made representations to Plaintiff during the negotiations to sell the dental practice.

35. Defendant supplied documentation and information which were false.

36. Defendant did not exercise reasonable care or competency in obtaining or communicating true information to Plaintiff.

37. Plaintiff justifiably relied on Defendant's representations and those representations proximately caused Plaintiff's injury and damages in an amount to be determined at trial.

38. Such unlawful, overt act caused Plaintiff's injury and damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a.     For breach of contract in the amount of at least $117,500.00;

b.     For Plaintiff's damages as a result of Defendant's fraud and misrepresentation;

c.     For punitive damages as a result of Defendant's fraud and misrepresentation;

5

c.    For Plaintiff's damages as a result of Defendant's negligent representation;

d.    For costs of this action and attorney's fees;

e.    For pre and post judgment interest;

f.    For such other and further relief as the Court deems proper.

Dated: November 3, 2005

ERIC S. SMITH
Attorney for Plaintiff

### Verification of Complaint

I, Alan Stuart Markoff, hereby verify that the factual allegations contained in the foregoing Complaint are true and accurate to the best of my knowledge, information and belief.

DATED this ___4___ day of November, 2005.

Alan Stuart Markoff, Plaintiff

### Jury Demand

Please take notice that, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in the above-entitled action.

DATED this 3rd day of November, 2005.

Eric S. Smith
Attorney for Plaintiff

6

# AGREEMENT

## FOR THE
## PURCHASE AND SALE
## OF
## A DENTAL PRACTICE

### BETWEEN

## TODD KEITH JOHNSON, D.D.S.,
## DOING BUSNESS AS TOOTHWORKS & OPENCHOICE
## SELLER

### AND

## ALAN STUART MARKOFF, D.D.S.
## PURCHASER

EXHIBIT "1" —

# AGREEMENT
# FOR THE PURCHASE AND SALE
# OF A DENTAL PRACTICE

THIS Agreement for the Purchase and Sale of a Dental Practice (this "Agreement") is made effective the 16th day of September, 2004, by and between Todd Keith Johnson, D.D.S., doing business as ToothWorks & OpenChoice (hereinafter referred to as "SELLER"), and Alan Stuart Markoff, D.D.S. (hereinafter referred to as "PURCHASER").

## WITNESSETH:

WHEREAS, SELLER owns and operates a dental practice (the "Practice") doing business as ToothWorks & OpenChoice at Saipan Health Clinic, Chalan Kiya, Saipan 96950, Northern Marianas; and

WHEREAS, SELLER desires to sell to PURCHASER substantially all of the assets used by SELLER in the operation of such Practice (also sometimes referred to herein as the 'business"), all as more specifically provided for herein; and

WHEREAS, PURCHASER desires to purchase substantially all of the assets used by SELLER in the operation of the business; and

WHEREAS, the parties desire to reduce to writing their understandings concerning the sale and purchase of the assets.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and promises herein contained, the adequacy of which each party hereby acknowledges, it is hereby agreed as follows:

## ARTICLE I.
## SALE OF ASSETS AND PURCHASE PRICE

1.1     Sale of Assets. SELLER agrees to convey to PURCHASER, at the time of Closing, by bill of sale substantially all of the operating assets owned by SELLER which pertain to or are a part of the operation of ToothWorks & OpenChoice (the "BUSINESS") located at Saipan Health Clinic, Chalan Kiya, Saipan 96950, except the Excluded Assets as defined in Section 1.2 below, consisting of the following:

3

Tangible Property

1.1.1 Dental Equipment- All dental units, lights, dental chairs, light curing equipment, hand pieces and the like, including without limitation those set forth in Exhibit "1.1.1" and Exhibit "1.1.2" attached hereto and made a part hereof, free and clear of all liens and encumbrances.

1.1.2 Office Equipment- All computer equipment and assignable software, telephone equipment, copy machines, fax machines owned by Seller, including without limitation those set forth in Exhibit "1.1.2" attached hereto and made a part hereof, free and clear of all liens and encumbrances.

1.1.3 Furniture and Fixtures- All of the furniture and fixtures and unattached decorations, sound systems, televisions and the like, and all leasehold improvements, including without limitation those set forth in Exhibit "1.1.2" attached hereto and made a part hereof, and a 1994 Honda Civic automobile, free and clear of all liens and encumbrances.

1.1.4 Clinical Supplies- All composite, impression materials, endodontic supplies, cotton and paper goods, preventive materials, and the like including without limitation those set forth in Exhibit "1.1.4" attached hereto and made a part hereof, free and clear of all liens and encumbrances. As of the date hereto the parties agree that the inventory of dental supplies has a value of $57,500.00. SELLER agrees that said inventory shall be in substantially the same composition and value on the date of closing as it existed on the date hereof.

1.1.5 Office Supplies - All of the office supplies, and other supplies presently being used in connection with operation of the business and on hand at the date of closing including without limitation those set forth in Exhibit "1.1.5" attached hereto and made a part hereof, free and clear of all liens and encumbrances. As of the date hereto the parties agree that the inventory of office supplies has a value of $10,000.00. SELLER agrees that said inventory shall be in substantially the same composition and value on the date of closing as it existed on the date hereof.

Intangible Property

1.1.6 Telephone Number and Listing- All current telephone numbers utilized at the business location and all listings of such numbers.

1.1.7 Trademarks and Trade Names- All trademarks and trade names used or owned by the BUSINESS, including "ToothWorks" and "OpenChoice". PURCHASER and his successors and assigns shall be entitled to use the aforesaid names. SELLER shall not use either of such names or any variation thereof following the Closing.

1.1.8 Contract Rights and Goodwill- All rights of SELLER under any contract relating to

4

the Practice, including without limitation any employment contract and any dental plan contract, and all of the goodwill and going concern value of the Practice.

1.1.9    Patient and Business Records.

(i) To the extent that SELLER can lawfully transfer whatever ownership it has in its patients' records, then on the Closing Date, SELLER shall give PURCHASER ownership and custody of all patient records of the Practice. PURCHASER shall hold such records in confidence except as may be necessary or appropriate in the treatment of patients who desire to be treated by PURCHASER, or as may be necessary and as requested by a patient, identify such records for transfer to another dentist at the written request of the patient; provided, however, that in such event, PURCHASER shall forward copies of such records and shall retain the original. SELLER may make and retain copies of, and shall have reasonable access during normal business hours to any patient files or records: (a) which are or may be relevant to any claim or defense SELLER may have against third persons in any action or proceeding concerning the conduct of the Practice prior to the Closing Date or (b) which are or may be relevant to SELLER'S liability for taxes in connection with or arising out of the conduct or ownership of the Practice prior to the Closing Date.

(ii) PURCHASER covenants and agrees that it will preserve and protect all patient records and office records of the Practice for such period of time as is required by applicable law. PURCHASER shall make such records available to SELLER or his agents, upon prior written request, at all reasonable times and places for examination and copying, at SELLER'S sole expense, subject to applicable law and professional standards, to the extent required by Section 1.1.9(i). Purchaser further covenants and agrees to give SELLER at least one hundred and twenty (120) days notice in writing of any intention to destroy any such files and records, and upon SELLER'S written request, SELLER shall be allowed to remove all or any of said files and records in accordance with state and federal laws. PURCHASER recognizes that such access by SELLER is required to defend any claim that may be brought against SELLER at some future date.

1.2    Excluded Assets. The parties acknowledge and agree that PURCHASER is not purchasing and SELLER is not selling: the cash on hand and cash in the bank, the accounts receivable, any causes of action, and rights of action, refund claims, rent and utility deposits, if any.

1.3    Purchase Price. PURCHASER agrees to purchase the BUSINESS and its assets listed in Article I hereinabove for the sum of Four hundred and fifty thousand Dollars ($450,000.00), allocated as follows:

1.3.1    Tangible Property. - For the assets described in Sections 1.1.1 to 1.1.5, the sum of Four hundred and five thousand dollars ($405,000.00), as further allocated as set

5

forth on Exhibit 5.3 attached hereto.

1.3.2    Intangible Property. - For the intangible assets described in Sections 1.1.6 to 1.1.9 plus the agreement not to compete provided for in Article IV hereof, the total sum of Forty-five thousand dollars ($45,000.00), as further allocated in Article IV and on Exhibit 5.3 attached hereto.

1.3.2    Reporting of Sale. It is agreed that the above allocations shall be reported by each party, pursuant to Internal Revenue Laws and regulations or pronouncements of Saipan, MP and the United States of America.

1.4    Employment Contracts. PURCHASER shall assume the obligations of SELLER under any employment contract with an employee of SELLER, but only to the extent that such obligations arise or accrue after the date of Closing. SELLER shall remain responsible for all obligations under any such employment contract accruing or arising on or prior to the date of Closing.

1.5    Dental Plan Contracts. PURCHASER shall assume the obligations of SELLER under any dental plan contract with a patient of SELLER, but only to the extent that such obligations arise or accrue after the date of Closing. SELLER shall remain responsible for all obligations under any such dental plan contract accruing or arising on or prior to the date of Closing.

1.6    House Leases. Subject to any required consent of the landlord, PURCHASER shall assume the obligations of SELLER under that certain Rental Agreement Year-To-Year Tenancy dated April 1, 2001 for the lease of a residence used by certain of the staff (the "Staff House Lease") and under that certain Residential Lease Agreement and Deposit Receipt dated October 2, 2003 for the lease of a unit used by Dr. Ronan (the "Ronan Lease"), but only to the extent that such obligations arise or accrue after the date of Closing. SELLER shall remain responsible for all obligations under such leases accruing or arising on or prior to the date of Closing. PURCHASER shall cooperate with SELLER'S efforts to obtain the release by the landlords of any further liability of SELLER under such leases, and PURCHASER shall furnish a new security deposit under the Staff House Lease so that the existing security deposit may be returned to SELLER. The security deposit under the Ronan Lease shall remain the property of SELLER and be payable to SELLER upon termination of the Ronan Lease.

## ARTICLE II.
## PAYMENT OF THE PURCHASE PRICE

2.1    The Purchase Price. At Closing, PURCHASER shall deliver to SELLER in immediately available funds the Purchase Price, namely, Four hundred and fifty thousand dollars (US$450,000.00), as may be adjusted upward or downward for

6

prorations.

# ARTICLE III.
## REPRESENTATIONS AND WARRANTIES

3.1     SELLER represents warrants and agrees that the following are true and correct on the date of this Agreement and will continue to be true and correct on each day until and including the Closing as though made on and as of each day:

3.1.1    <u>Financial Information</u> - All financial information concerning SELLER'S business provided to PURCHASER by SELLER, including but not limited to profit and loss statements, balance sheets, position statements, income tax returns, and the like, truly and correctly reflect and fairly present such of the financial affairs of SELLER as they purport to represent; and said financial information was correctly and properly prepared in accordance with generally accepted accounting principles applied on a consistent basis and in accordance with applicable tax laws; and that no material changes have occurred since the last of such statements or tax returns was prepared or filed.

3.1.2    <u>Lawful Owner, Marketable Title</u> - SELLER is now and will at the date of closing hereunder be the lawful owner of and have good, valid and marketable title to all of the property of the business which it purports to own and which are being sold, transferred or assigned by SELLER to PURCHASER hereunder; and all of said property will be, at the time of closing, free and clear of any and all liens, security interest, restrictions, limitations, charges and encumbrances. SELLER has and will have at said time of closing good right, title and authority to sell, transfer and convey the same as aforesaid; and SELLER will warrant and defend the same against the lawful claims and demands of all persons whomsoever. Except for the Excluded Assets, the assets, properties, rights and interests which are the subject of this Agreement constitute all of the assets, properties, rights and interests used by SELLER in the conduct of the business.

3.1.3    <u>Authority</u> - The execution and delivery of this Agreement, the consummation of the transaction contemplated hereby and the compliance by SELLER with all provisions hereof will not (i) violate any provision of the terms of any applicable law, rule or regulation of any governmental body having jurisdiction; (ii) conflict with or result in a breach or default under of any of the terms, conditions or provisions of, or accelerate or permit the acceleration of the performance required by, any note, bond, mortgage, indenture, license, agreement or other instrument or obligation of any nature whatsoever to which SELLER is a party, or (iii) violate any order, writ, injunction, decree, statute, rule or regulation applicable to SELLER for any of its property or assets.

3.1.4    <u>No Consent To Transfer</u> - None of the properties or assets to be purchased by

7

PURCHASER hereunder is subject to any restrictions or limitations prohibiting the transfer contemplated herein, and no consent to such transfer is required by any individual or entity not a party hereto.

3.1.5    No Third Party Options. There are no existing agreements, options, commitments or rights with, of or to any person to acquire any of SELLER'S assets, properties or rights included in the Assets or any interest therein.

3.1.6    Inventory - SELLER'S inventory is of generally acceptable and usable quality and does not include a material amount of obsolete or unusable items.

3.1.7    Payment Of Debts - SELLER will pay or cause to be paid, all debts, taxes, staff payroll and related payroll taxes and liabilities of SELLER which are or might become the basis for any action, proceeding or investigation resulting in any order, injunction, or decree against SELLER.

3.1.8    Condition Of Equipment - The equipment, furniture and fixtures of the business are in good working order and repair, and will continue to be in good working order and repair as of the date of closing.

3.1.9    No Conflict With Agreements - Neither the execution and delivery of this Agreement by SELLER nor the consummation of the transactions contemplated hereby will, with or without the giving of notice or the passage of time, or both, conflict with, result in a breach of, accelerate any obligation under, constitute any default under or give rise to a right of termination of, any material agreement of which SELLER is a party of by which any of SELLER'S material assets or properties are bound or affected, or, to the best of SELLER'S knowledge, conflict with or violate any judgment, decree, order, statute or other provision of law or rule or regulation of any governmental body binding upon SELLER.

3.1.10    Expenditures - From and after the date hereof, SELLER will make no expenditures without the written consent of PURCHASER; provided, however, that there is excepted here from reasonable and customary purchase of inventory items necessary to carry on SELLER'S business through closing and to transfer to PURCHASER at closing inventory and other items sufficient for PURCHASER to carry on the business in its normal course.

3.1.11    Compliance With Law - To the best of SELLER'S knowledge, information and belief, SELLER has complied with all applicable laws, regulations and orders applicable to SELLER'S business and properties. SELLER has received no notice that its business or assets are in violation of any applicable governmental laws or regulations.

3.1.12    No Removal Of Assets - SELLER, from and after the execution of this Agreement to and including the date of closing, did not and will not remove or permit the

removal from its place of business any of the furniture, fixtures, equipment, inventory, patient files and charts, supplier lists, and stationery and advertising materials contained therein on said date, except for the sale and use of such items in the ordinary course of SELLER'S business.

3.1.13 Litigation –To the best of SELLER'S knowledge, information and belief, there is no action or proceeding, pending or threatened against SELLER before any court or before any governmental department, commission, board, agency, or instrumentality regarding the Practice nor does SELLER know, or have reasonable grounds to know, of any basis for any such action, or proceeding resulting in any order, injunction, or decree against SELLER.

3.1.14 Environmental Matters - To the best of SELLER'S knowledge, information and belief the business is not in violation of any applicable government regulations. SELLER represents and warrants that no notice has been received from any governmental agency directing SELLER to cure any alleged violation.

3.1.15 Employees - SELLER has delivered to PURCHASER true and correct copies of all employment contracts that SELLER has with any employee of SELLER. No notice of termination has been given by either party under any such contract. To the best of SELLER'S knowledge, information and belief, neither party is in default under any such employment contract, and each of such contracts may be terminated at the end its stated term without further obligation of SELLER or PURCHASER.

3.1.16 Dental Plan Contracts - SELLER has delivered to PURCHASER a representative example of SELLER'S dental plan contracts. None of the other dental plan contracts materially varies from the example delivered to PURCHASER. To the best of SELLER'S knowledge, information and belief, no default has occurred under any such dental plan contract, and no dental plan contract has been terminated by the patient since August 1, 2004.

3.1.17 Complete Representations - To the best of SELLER'S knowledge, information and belief, all material facts concerning the substance of this Agreement have been disclosed by SELLER to PURCHASER. No representation or warranty made by SELLER in this Agreement or any attachments hereto, nor any statement or certificate to be furnished or to be furnished to PURCHASER pursuant hereto, or in connection with the transactions contemplated hereby, contains or will contain any untrue statement, or omits or will omit to state a fact necessary to make the statements contained herein not misleading. SELLER is not involved in any undisclosed transactions, proceedings or investigations, including claims for unpaid taxes, which might materially or adversely affect the assets and/or rights and obligations which are to be the subject of the sale and/or transfer hereunder, and which would hinder or prevent the transactions contemplated by this Agreement.

3.1.18 Survival Of Warranties - The covenants, representations and warranties set forth

9

herein are made as of the date of execution of this Agreement, but SELLER agrees that by the act of closing the sale and purchase hereunder, the said covenants, representations and warranties shall be deemed confirmed as of the date of closing and all such covenants, representations and warranties shall survive the making of this Agreement and the closing for a period of one (1) year.

3.2     PURCHASER represents, warrants and agrees that the following are true and correct on the date of this Agreement and will continue to be true and correct on each day until and including the Closing as though made on and as of each day:

3.2.1   <u>Full Power and Authority</u>.  Neither the execution of this Agreement nor its performance by PURCHASER will conflict with or result in the breach of any mortgage, encumbrance, instrument, covenant, or other undertaking whatsoever. No action by any governmental department, commission, board, bureau, or instrumentality is necessary to make this Agreement a valid instrument binding upon PURCHASER in accordance with its terms.

3.2.2   <u>Litigation</u> - To the best of PURCHASER'S knowledge, information and belief, there is no action proceeding, or investigation pending or threatening against PURCHASER before any court or before any governmental department, commission, board, agency, or instrumentality regarding the business nor does PURCHASER know, or have reasonable grounds to know, of any basis for any such action, proceeding or investigation resulting in any order, injunction, or decree against PURCHASER.

3.2.3   <u>Knowledge Regarding SELLER'S Warranties</u> – Except as may be specified in a written notice from PURCHASER to SELLER at or prior to the Closing, PURCHASER has no actual knowledge of any breach of any representation, warranty or covenant of SELLER contained herein.

3.2.4   <u>Survival Of Warranties</u> - The covenants, representations and warranties set forth herein are made as of the date of execution of this Agreement, but PURCHASER agrees that by the act of closing the sale and purchase hereunder, the said covenants, representations and warranties shall be deemed confirmed as of the date of closing and all such covenants, representations and warranties shall survive the making of this Agreement and the closing for a period of one (1) year.

**ARTICLE IV.**
**AGREEMENT NOT TO COMPETE**.

As a material inducement for PURCHASER to enter into this Agreement, SELLER shall enter into the Agreement not to Compete against the business for a ten-year period from the date of Closing, all as more fully set forth on Exhibit "4.0" attached hereto and incorporated herein by reference. Thirty-four Thousand Five Hundred Dollars (US$34,500.00) of the

10

PAGE 12

purchase price shall be allocated to such Agreement not to Compete.

## ARTICLE V.
## CLOSING

5.1    Time and Place. - The closing of the transactions provided for herein (the "Closing") shall be held on October 15, 2004 at Wallis State Bank in Houston, Texas, or on such other date or at such other place as both parties may agree. The date on which the Closing occurs is sometimes referred to herein as the "Closing Date."

5.2    Transfer Instruments. - SELLER shall convey all property and assets of the business to be sold to PURCHASER by delivering to PURCHASER bills of sale and assignments as follows:

5.2.1    Bills of Sale.    A bill or bills of sale in form satisfactory to PURCHASER executed and delivered by SELLER warranting SELLER to be the owner of and covering all equipment, inventory, tools, furniture and fixtures, supplies, telephone number and listings, and all other personal property being sold as described in Section 1.1 above;

5.2.2    Assignment of Lease.    Assignment of the real estate lease for the southwest portion of the building known as Saipan Health Clinic Building complex in Chalan Kiya, Saipan between Health Professional Corporation, to be assigned to PURCHASER with the consent of the Landlord to such assignment and a release of SELLER from liability under such lease;

5.2.3    Other Assignments.    An assignment of the name ToothWorks & OpenChoice and any other assumed names under which the SELLER is doing business, and such other assignments and motor vehicle title applications and certificates as counsel for PURCHASER reasonably deems necessary for assignment and transfer to PURCHASER of the other assets as are being sold hereunder as assets of the business, together with any necessary consents from third parties to such assignments;

5.2.4    Other Documents- SELLER will, on or after closing, execute and deliver any other documents as may be reasonably necessary to transfer, or further perfect, title to the assets transferred to PURCHASER.

5.3    Closing Statement - At the time of closing, a closing statement shall be attached and made a part of this Agreement as Exhibit "5.3". The closing statement shall be signed by each of the parties and shall reflect any proration hereunder as the parties shall agree.

5.4    Deliveries at Closing.

11

5.4.1    SELLER'S Deliveries.

(i)      SELLER shall deliver possession of the premises to PURCHASER together with the keys to the premises.

(ii)     SELLER shall deliver to PURCHASER a certificate duly executed and delivered by SELLER confirming that SELLER'S covenants, representations and warranties set forth in the Agreement were true and correct as of the date of this Agreement and remain true and correct as of the Closing Date and that SELLER has complied in all material respects with all covenants of SELLER up to and through the Closing Date.

(iii)    SELLER shall execute and deliver to PURCHASER the documents listed in Section 5.2 above.

5.4.2    PURCHASER'S Deliveries.

(i)      PURCHASER shall deliver to SELLER a certificate duly executed and delivered by the PURCHASER confirming that PURCHASER'S covenants, representations and warranties set forth in the Agreement were true and correct as of the date of this Agreement and remain true and correct as of the Closing Date and that PURCHASER complied in all material respects with all covenants of PURCHASER up to and through the Closing Date.

(ii)     PURCHASER shall pay to SELLER in the form of immediately available funds the sum of Four hundred and fifty thousand dollars (US$450,000.00).

## ARTICLE VI.
## BOOKS AND RECORDS

PURCHASER acknowledges receipt of the SELLER'S income tax return for the years ended December 31, 2000, 2001, 2002 and 2003. In addition thereto, at any time prior to the date of closing, PURCHASER or PURCHASER'S representatives shall have full and complete access to SELLER'S books and records regarding the business during the years 2000 through 2004 including, but not limited to, journals, ledgers, balance sheets, profit and loss statements, federal and state income tax returns, purchase invoices, sales records, etc. SELLER shall make such records available to PURCHASER or PURCHASER'S representatives upon request during normal business hours of the SELLER.

## ARTICLE VII.
## LIABILITIES TO BE PAID BY SELLER AND PURCHASER

7.1     SELLER will, prior to or as soon after closing as is reasonably possible, pay all

12

ordinary operating expense liabilities of the business which are due and payable or accrued through the date of Closing which the parties acknowledge is the last day on which SELLER operated the business, on or before such date.

7.2     PURCHASER will, subsequent to closing, pay all ordinary operating expense liabilities of the business which become due and payable after such date on account of PURCHASER'S ownership and operation of the business, subject to the provisions herein including without limitation Article VIII hereof.

7.3     Nothing in this Agreement or otherwise shall constitute any agreement on the part of PURCHASER to assume any liabilities of any nature of SELLER; all liabilities of SELLER as of the date indicated above shall be the sole and complete responsibility of SELLER to pay, and SELLER agrees to pay all such liabilities timely and in full as they become due.

## ARTICLE VIII.
## PRORATIONS AND COMMISSIONS

8.1     Rent.   Rent shall be prorated from the date of the last payment to and including the date of Closing.

8.2     Other Prorations.  In the event that the public utilities are unable to make final readings at or about the Closing Date, the parties shall pro rate the utility bills for the month including the date of Closing.  The parties shall send letters to such utilities in substantially the form as attached as Exhibit 8.2 hereto.

8.3     Brokerage Commissions.  SELLER shall be responsible for any broker's or any other commissions that are due to any party with respect to the transactions contemplated by this Agreement, except that PURCHASER shall be responsible for any fees or commissions of any person or entity retained by PURCHASER, including, without limitation, Bruce J. Lowy.

## ARTICLE IX.
## ACCOUNTS RECEIVABLE

At Closing SELLER shall appoint Angelita Mamaril as SELLER'S attorney-in-fact for the limited purposes of opening any mail addressed to P.O. Box 504699, Saipan, MP 96950-4699, Todd Keith Johnson, D.D.S., ToothWorks, OpenChoice and/or Saipan Health Clinic, Chalan Kiya, Saipan 96950 or, which is received by PURCHASER so as to determine whether or not such mail constitutes correspondence addressed to SELLER or whether or not such mail contains payments for dental services provided by SELLER prior to Closing.

9.1     General Correspondence Addressed to SELLER.  PURCHASER shall promptly

13

forward to SELLER all correspondence which the sender intended for SELLER, except for checks issued in payment for dental services rendered by SELLER.

9.2     <u>Payments for Dental Services.</u>

9.2.1   All checks or other payments for dental services rendered by SELLERS and received by PURCHSER shall be deposited into a separate bank account opened by PURCHASER at a bank of PURCHASER'S choosing.

9.2.2   PURCHASER shall render a semi-monthly accounting on the fifteenth (15th) day and on the last day of each month to SELLER of SELLER'S accounts receivable collected by PURCHASER. For the first three months following the Closing, PURCHASER shall remit to SELLER an amount equal to fifty (50%) percent of the accounts receivable collected. The remaining fifty (50%) percent shall be distributed to PURCHASER as a loan from SELLER to PURCHASER, repayable without interest no later than one year following the Closing. For the fourth through sixth months following the Closing, PURCHASER shall remit to SELLER one hundred percent (100%) of the accounts receivable so collected. This obligation on the part of PURCHASER to collect SELLER'S accounts receivables shall terminate six months from the date of Closing. Thereafter, SELLER shall be responsible for his own billing, and any payments received by PURCHASER shall be first applied to PURCHASER'S billing and then to SELLER. Insurance payments shall be applied as directed by the explanation of benefits statement submitted by the dental insurance company statements.

## <u>ARTICLE X.</u>
## <u>CONTINGENCIES</u>

10.1    PURCHASER'S CONTINGENCIES. The duty and obligation of PURCHASER to perform under the terms of this Agreement is expressly conditioned upon the occurrence of all of the following events (unless expressly waived in writing by PURCHASER); nonfulfillment of any of the following contingencies on or before the date of closing shall, at the option of PURCHASER, terminate and void the Agreement and any and all amounts heretofore paid by PURCHASER to SELLER shall be returned forthwith to PURCHASER. The contingencies are as follows:

10.1.1  REAL ESTATE LEASE- PURCHASER'S obligations hereunder are contingent upon the assignment to PURCHASER of SELLER'S lease of the real estate at Saipan Health Clinic, Chalan Kiya, Saipan 96950, Northern Marianas, concurrent with the Closing hereunder and the Landlord's consent to assignment.

10.1.2  SELLER entering into the AGREEMENT NOT TO COMPETE in substantially the form set forth on Exhibit "4.0" attached hereto.

10.1.3  All of SELLER'S representations and warranties shall be true and correct as of the

14

Closing, and SELLER shall have performed or complied with all of his obligations required to be performed or complied with at or prior to the Closing.

10.1.4 NO ADVERSE DEVELOPMENTS - There shall not have been any material adverse change in the assets or condition of the business, financial or otherwise (including without limitation, personnel, properties or relationships with employees, suppliers, customers or others) between the date of this agreement and the date of closing. A casualty loss, insured or uninsured, in excess of $5,000.00 shall be considered a material adverse change in the SELLER'S condition. SELLER agrees to operate and maintain the business in its regular course from the date of this agreement to closing, subject to the provisions herein.

10.1.5 FINANCING – PURCHASER shall have obtained financing for the Purchase Price on terms reasonably satisfactory to PURCHASER.

10.2 SELLER'S CONTINGENCIES. The duty and obligation of SELLER to perform under the terms of this Agreement is expressly conditioned upon the occurrence of all of the following events (unless expressly waived in writing by SELLER; nonfulfillment of any of the following contingencies on or before the date of closing shall, at the option of SELLER, terminate and void the Agreement. The contingencies are as follows:

10.2.1 REAL ESTATE LEASE- SELLER'S obligations hereunder are contingent upon the Landlord's consent to assignment of SELLER'S lease to PURCHASER and the Landlord's release of SELLER from the obligations under such lease following such assignment.

10.2.2 PURCHASER entering into an AGREEMENT NOT TO COMPETE in substantially the form set forth on Exhibit "4.0" attached hereto.

10.2.3 All of PURCHASER'S representations and warranties shall be true and correct as of the Closing, and PURCHASER shall have performed or complied with all of his obligations required to be performed or complied with at or prior to the Closing.

10.2.4 SELLER shall have received the Purchase Price in the form of immediately available funds.

## ARTICLE XI
## DEFAULT AND REMEDIES

11.1 Default. In the event that either party hereto shall consider the other party to be in default or to have breached any of the terms of this Agreement, notice stating with particularity the manner in which such default is claimed shall be given in writing to the alleged defaulting or breaching party. In such event, the alleged defaulting or

15

breaching party shall have five (5) days to cure such default or breach before being deemed in actual default under this Agreement. The giving of any such notice shall not prevent the alleged defaulting party from establishing that, in fact, no default did occur.

11.2    Remedies

11.2.1  Failure to Close.    If, without breach by SELLER or PURCHASER, the contingencies and conditions to Closing are not and cannot be eliminated, satisfied, or waived within the time limits set forth herein, either party may either withdraw from and terminate this Agreement or waive the condition or portion thereof which cannot be satisfied and proceed with Closing. If terminated, this Agreement shall be deemed null and void.

11.2.2  SELLER'S Breach. If SELLER breaches this Agreement and fails to close the sale contemplated hereby through no fault of PURCHASER, PURCHASER shall be entitled, at PURCHASER'S election (a) to terminate its obligations to perform further under this Agreement and recover any and all damages; (b) to seek specific performance of this Agreement; and (c) to pursue any and all remedies in addition to or by way of alternative to the foregoing available at law or in equity.

11.2.3  PURCHASER'S Breach.   If PURCHASER breaches this Agreement and fails to close the purchase contemplated hereby through no fault of SELLER, SELLER shall be entitled, at Seller's election (a) to terminate its obligations to perform further under this Agreement and recover any and all damages; (b) to seek specific performance of this Agreement; and (c) to pursue any and all remedies in addition to or by way of alternative to the foregoing available at law or in equity.

## ARTICLE XII.
## GENERAL CONDITIONS

12.1    MAINTENANCE OF PROPERTY - SELLER will maintain through the date of the Closing the property of the business, including equipment, in at least as good condition and repair as it is on the date of this agreement and will not voluntarily suffer anything to be done that will decrease the value of SELLER'S property, ordinary wear and tear excepted, and subject to the provisions herein. Further, if any dental equipment sold to PURCHASER hereunder requires repair as a result of normal usage within ninety (90) days of the date of the Closing, SELLER shall reimburse PURCHASER for the cost of such repair within ten (10) days of notice thereof from PURCHASER. The preceding sentence shall not apply to the cost of routine maintenance.

12.2    APPROVAL OF INSTRUMENTS - Counsel for PURCHASER will approve the form, substance and sufficiency of all instruments to be delivered by SELLER at or

16

before closing. Approval will not be unreasonably withheld.

12.3  SURVIVAL OF REPRESENTATIONS, WARRANTIES AND AGREEMENTS -
All representations, warranties and agreements made by the SELLER and
PURCHASER in this Agreement shall survive the consummation of this agreement
and any investigation made at any time by or on behalf of PURCHASER for a
period of one (1) year following the date of the Closing.

12.4  WAIVER. Neither the failure nor any delay by any party in exercising any right,
power, or privilege under this Agreement or the documents referred to in this
Agreement will operate as a waiver of such right, power, or privilege, and no single
or partial exercise of any such right, power, or privilege will preclude any other or
further exercise of such right, power, or privilege or the exercise of any other right,
power, or privilege. No provision of this Agreement or the documents referred to in
this Agreement or the performance thereof can be waived except in writing signed
by the party waiving compliance.

12.5  SUCCESSORS - This agreement shall be binding upon and inure to the benefit of
the successors and assigns of SELLER and PURCHASER.

12.6  NOTICES - All notices shall be in writing and delivered in person or sent by
certified, registered or express mail or by facsimile, if for SELLER addressed as
follows:

If to SELLER

Todd Keith Johnson, D.D.S.
c/o Dee Johnson
13901 N.E. 8th
Choctaw, Oklahoma 73020

With a copy to:

James M. Peters, Esquire
Monnet, Hayes, Bullis, Thompson & Edwards
120 North Robinson, Suite 1719
Oklahoma City, Oklahoma 73102

If to PURCHASER

Alan Stuart Markoff, D.D.S.
31 Stillforest
Houston, Texas 70024-7518

with a copy to:

David M. Washburn, Esquire
Nathan Sommers Jacobs + Gorman
2800 Post Oak Boulevard, 61st Floor
Houston, Texas 77056

or such other address for either or both as is stated in a written notice given in compliance under this clause.

12.7　HEADINGS - The various headings used in this agreement as headings for sections or otherwise are for convenience only and shall not be used in interpreting the text of the section in which they appear.

12.8　GOVERNING LAW - This agreement shall be construed and interpreted in accordance with the laws of the State of Texas USA, without regard to choice of law principles thereof.

12.9　SEVERABILITY - The invalidity of any provision of this agreement shall not impair the validity of any other provision. If any provision of this agreement is determined by a court of competent jurisdiction to be unenforceable, that provision will be deemed severable and the agreement may be enforced with that provision severed or as modified by the court.

12.10　ENTIRE AGREEMENT AND MODIFICATION - This agreement sets forth the entire understanding of the parties. It may only be amended, modified or terminated by instrument signed by the parties.

12.11　COUNTERPARTS - This agreement may be executed in multiple counterparts, each of which shall be deemed to be and shall constitute one and the same instrument.

12.12　TIME - Time is of the essence of this contract.

12.13　RULES OF CONSTRUCTION - The normal rules of construction which require the terms of an agreement to be construed most strictly against the drafter of such agreement are hereby waived since each party has been represented by counsel in the drafting and negotiation of this Agreement.

12.14　ADMONISHMENT TO PARTIES. Each of the parties hereto acknowledges that this Agreement is a "form" agreement supplied by Progressive Management & Associates (PM). Each of the parties hereby acknowledges that is not a legal firm and that its agent, is not attorneys and is not, therefore, legal counsel for either PURCHASER or SELLER. Each of the parties hereby acknowledges and agrees that they have been admonished by PM, and their agents, to have this Agreement and the terms, covenants, and conditions of this Agreement reviewed by legal

18

counsel of their own choosing. The parties further acknowledge and agree that they are not relying upon any representation by PM, or by its employees or agents as to the meaning or effect of this Agreement.

## ARTICLE XIII.
## INDEMNITY AGREEMENT

13.1  SELLER agrees to indemnify and save and hold PURCHASER harmless from and against any and all claims, demands, causes of action, liability and loss of every kind and nature whatsoever, together with costs and expenses, relating to or resulting or arising from (i) the business, debts or liabilities of SELLER, including but without limitation of the foregoing, any claims, liens, or liabilities accruing through the date of Closing; (ii) any misrepresentation, breach of warranty, or nonfulfillment of any agreement on the part of SELLER under this AGREEMENT or any certificate or other instrument furnished or to be furnished to PURCHASER hereunder; (iii) any obligation or liability under any employment agreement between ToothWorks and an employee of ToothWorks accruing or arising on or prior to the date of Closing; (iv) any obligation or liability of OpenChoice under any dental plan contract with a patient accruing or arising on or prior to the date of Closing; and (v) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing. SELLER shall reimburse PURCHASER and PURCHASER'S successors or assigns, on demand, for any payment made by PURCHASER or PURCHASER'S successors or assigns, at any time after the closing hereunder with respect to any liability or claim to which the foregoing indemnity relates.

13.2  PURCHASER agrees to indemnify and save and hold SELLER harmless from and against any and all claims, demands, causes of action, liability and loss of every kind and nature whatsoever, together with costs and expenses, relating to or resulting or arising from (i) the business, debts or liabilities of PURCHASER, including but without limitation of the foregoing, any claims, liens, or liabilities arising out of or resulting from any failure to pay its liabilities accruing subsequent to the date of Closing; (ii) any misrepresentation, breach of warranty, or nonfulfillment of any agreement on the part of PURCHASER under this AGREEMENT or any certificate or other instrument furnished or to be furnished to SELLER hereunder; (iii) any obligation or liability under any employment agreement between ToothWorks and an employee of ToothWorks accruing or arising after the date of Closing; (iv) any obligation or liability of OpenChoice under any dental plan contract with a patient accruing or arising after the date of Closing; and (v) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing. PURCHASER shall reimburse SELLER and SELLER'S successors or assigns, on demand, for any payment made by SELLER or SELLER'S successors or assigns, at any time after the closing hereunder with respect to any liability or claim to which the foregoing indemnity relates.

and nature whatsoever, together with costs and expenses, relating to or resulting or arising from (i) the business, debts or liabilities of PURCHASER, including but without limitation of the foregoing, any claims, liens, or liabilities arising out of or resulting from any failure to pay its liabilities accruing subsequent to the date of Closing; (ii) any misrepresentation, breach of warranty, or nonfulfillment of any agreement on the part of PURCHASER under this AGREEMENT or any certificate or other instrument furnished or to be furnished to SELLER hereunder; (iii) any obligation or liability under any employment agreement between ToothWorks and an employee of ToothWorks accruing or arising after the date of Closing; (iv) any obligation or liability of OpenChoice under any dental plan contract with a patient accruing or arising after the date of Closing; and (v) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing. PURCHASER shall reimburse SELLER and SELLER'S successors or assigns, on demand, for any payment made by SELLER or SELLER'S successors or assigns, at any time after the closing hereunder with respect to any liability or claim to which the foregoing indemnity relates.

## ARTICLE XIV.
## SELLER TO EXECUTE DOCUMENTS

SELLER agrees that on the date of closing SELLER will execute and deliver to PURCHASER such valid and appropriate assignments, bills of sale, and any other conveyance required to effectuate the transactions contemplated hereunder (whether or not the exact form of such document is specified herein) in form satisfactory to counsel for PURCHASER, the approval of which shall not be unreasonably withheld. Such conveyances shall describe the property covered thereby and shall contain full covenants of general warranty.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed, each with full authority to act on date above first written.

SELLER:

_____ DDS          Date: _____9/30/04_____
TODD KEITH JOHNSON, D.D.S

PURCHASER:

_____ .DDS          Date: SEPTEMBER 16, 2004
ALAN STUART MARKOFF, D.D.S.

20

# CONSULTING AGREEMENT

THIS Agreement is made and entered into as of the date stated below by and between Alan Stuart Markoff, D.D. S., doing business as Toothworks – Open Choice ("Toothworks"), and Todd Keith Johnson, D.D.S. ("Consultant").

WHEREAS, on even date herewith Toothworks acquired from Consultant the dental practice located on the island of Saipan known as "Toothworks-Open Choice" pursuant to that certain Agreement for the Purchase and Sale of Dental practice between the parties hereto;

WHEREAS, Toothworks wishes to engage Consultant to assist Toothworks in managing and operating such dental practice during a transition period following such acquisition, and Consultant is willing to accept such engagement;

NOW, THEREFORE, in consideration of the promises and the mutual covenants herein contained, the parties do hereby agree as follows:

1.    Engagement.  Toothworks hereby engages Consultant, and Consultant hereby accepts such engagement and agrees to perform the services specified herein, upon the terms and conditions hereinafter set forth.

2.    Term.  The term of Consultant's engagement under this Agreement shall be for a period of sixty (60) months, beginning on the effective date hereof.

3.    Consulting Services.  Consultant agrees to provide consulting services, assistance, and advice relating to the Toothwork's dental practice as may be reasonably requested by Toothworks.

4.    Compensation.  Toothworks shall pay to Consultant for his services rendered hereunder a consulting fee of $1,450 per month, payable on the effective date hereof and the same day of each of the succeeding fifty-nine (59) months.

5.    Independent Contractor.  As an independent contractor hereunder, Consultant shall have no authority to bind Toothworks to incur any liability on behalf of Toothworks or to bind Toothworks to any obligation, and Consultant shall not be entitled to participate in any benefit plans or programs that Toothworks may maintain or establish for its employees. Consultant shall be solely responsible for the payment of all income, employment, and other taxes arising out of this Agreement or the compensation payable to Consultant hereunder.

6.    Validity.  In the event any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement and the Agreement shall be construed as if such invalid, illegal, or unenforceable provisions were omitted.



EXHIBIT "2"

7.     Waiver. The failure of a party at any time, or from time to time, to require performance by the other party of any provision hereof shall in no way affect the rights of such party thereafter to enforce the same, nor shall the waiver by a party of any breach of any provision hereof constitute a waiver of any succeeding breach of such provision or a waiver of any breach of any other provision hereof.

8.     Amendment. This Agreement constitutes the sole existing agreement between the parties with respect to the subject matter hereof. This Agreement may be amended, modified, superseded, or cancelled, and any of the terms or conditions contained herein may be waived, only by a written instrument executed by all parties hereto, or in the case of a waiver, by the party waiving compliance.

9.     Assignment. Consultant may not assign his rights or obligations hereunder. The rights and obligations of Toothworks hereunder shall inure to the benefit of and shall be binding upon the successors and assigns of Toothworks.

10.     Governing Law. This Agreement shall be interpreted, construed, and governed according to the laws of the state of Texas, without regard to choice of law principles thereof.

       EXECUTED as of the  15  day of  December , 2004.

Toothworks                                    Consultant:

Alan Stuart Markoff, D.D.S.                    Todd Keith Johnson, D.D.S.

W:\Markoff\Consulting Agreement.doc