ERIC S. SMITH, Bar No. F 0157
SMITH & WILLIAMS
Attorneys at Law
P.O. Box 5133 CHRB
Saipan MP 96950
Tel:   233-3334
Fax:  233-3336

Attorneys for Plaintiff

F I L E D
Clerk
District Court

FEB 24 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

ALAN STUART MARKOFF, D.D.S. dba
TOOTHWORKS and OPEN CHOICE,

  Plaintiff,

vs.

TODD KEITH JOHNSON, D.D.S.

  Defendant.

CIVIL ACTION NO. 05-0035

**FIRST AMENDED COMPLAINT
AND DEMAND
FOR JURY TRIAL**

**JURISDICTION AND VENUE**

1.   Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

2.   The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3.   The CNMI is the venue in which Plaintiff currently works as well as the place where the tortuous injury occurred, and because the Defendant is subject to personal jurisdiction therein, venue is properly placed in the CNMI pursuant to 28 U.S.C. §1391.

## PARTIES

4. Plaintiff, Alan Stuart Markoff, is a citizen of the United States a domiciliary of Houston, Texas doing business in the island of Saipan, Commonwealth of the Northern Mariana Islands.

5. Defendant Todd Keith Johnson is a citizen of the United States and, on information and belief, a resident of the state of Oklahoma.

6. Plaintiff and Defendant entered into a contract for the purchase and sale of Defendant's dental practice in Saipan, CNMI. Defendant at the time of the purchase, was a resident of Saipan, CNMI.

## FACTS

7. Defendant, licensed to practice dentistry in the Commonwealth of the Northern Mariana Islands, opened a dental practice on the island of Saipan in the name of ToothWorks in 1997.

8. In 2001, Defendant started another business on the island of Saipan called Open Choice, a dental membership company designing to provide dental services to its members at ToothWorks dental clinic.

9. In 2003 defendant decided to sell his dental practice businesses and he listed them for sale with a brokerage firm in the state of Oregon called Million Dollar Dental Practices, Inc. which specialized in the purchase and sale of dental practices.

10. Plaintiff's interest in the purchase of ToothWorks and Open Choice began in July 2003, when the owner of Million Dollar Dental Practices, Inc., suggested that Plaintiff purchase the dental practice on Saipan as a durable business that Plaintiff could manage from off-island requiring only quarterly visits.

11. On July 31, 2003, Defendant's in house accountant in Saipan sent to Plaintiff in Houston Texas through Million Dollar Dental Practice Inc. in Oregon, what was reported to be by Defendant's in house accountant a complete set of the financial records of ToothWorks and Open Choice for the years 1998 through 2002 with the then current financial report for

the months of 2003 ending June 30, 2003. At that same time, the Defendant's in house accountant also sent to Plaintiff in Texas through the Defendant's broker in Oregon, business tax returns of ToothWorks from 1999 through 2002 with the exception that the 1998 tax return was not available but Plaintiff was told that one would be requested from the Department of Revenue and Taxation for the Commonwealth of the Northern Mariana Islands. At that same time, the Defendant's in house accountant sent to Plaintiff in Texas through Defendant's broker in Oregon, the business tax returns of Open Choice for 2001 through the first six months of 2003.

12. On or about July, 2003, the broker in Oregon suggested that Plaintiff travel to Saipan to investigate ToothWorks and Open Choice's facilitates.

13. In early August, 2003, Plaintiff traveled to Saipan to look at ToothWorks and Open Choice as a possible investment. Plaintiff spent approximately six days on the island of Saipan and at the ToothWorks dental clinic.

14. Defendant through his accounting staff of ToothWorks and Open Choice provided Plaintiff with accounting documents showing income generated by the businesses for the years 1997 through two quarters of 2003. These documents included statements of the deposits made by members of Open Choice and patients of ToothWorks, the operating expenses of the businesses, the salaries paid to the dentists and staff of ToothWorks and Open Choice, and tax returns for the businesses.

15. On or about May 7, 2004, Defendant provided Plaintiff his narrative, written in the first person, of the history of ToothWorks and Open Choice which included statements of the annual revenues generated by ToothWorks for each of the years 1997 through 2003 and by Open Choice for each of the years 2001 through 2003.

16. On September 16, 2004, Defendant and Plaintiff entered into an *Agreement for the Purchase and Sale of Defendant's Dental Practice in Saipan, CNMI*. See Exhibit 1.

17. Plaintiff's decision to purchase the dental practice was largely due to his reliance on the accuracy of the amounts of the deposits made by members, customers, and patients of ToothWorks and Open Choice, and Defendant's representations that the deposits made to

1  Defendant's accounts reflected the accurate cash flow made by patients and customers of ToothWorks and Open Choice.

18. The agreement called for the payment by Plaintiff of five hundred twenty-five thousand dollars ($525,000.00) to Defendant.

19. Plaintiff paid Defendant four hundred thousand dollars ($400,000.00) and signed two promissory notes. One in the amount of fifty thousand dollars ($50,000.00) plus interest, and the second in the amount of seventy-five thousand dollars ($75,000.00).

20. On December 15, 2004, Plaintiff entered into a consulting agreement with Defendant calling for Defendant to act as consultant to Plaintiff in exchange for a consulting fee of one thousand four hundred fifty dollars ($1,450.00) per month for sixty (60) months. *See* Exhibit 2. Plaintiff has made three payments to Defendant pursuant to this agreement.

21. Since Plaintiff took over the dental practice, Plaintiff has learned that the documents provided by Defendant or his staff did not accurately reflect the deposits made by members, patients, and customers, and the statements of the accuracy of the financial information showing the cash flow made by Defendant were false.

22. The amount stated in the consolidated deposits was overstated.

23. As a result of the overstatement, the true revenue deposits were less than represented and the fair market value of the business was at least equally reduced in an amount of the overstatement.

24. Most dental practice sales are valued using the figure of sixty percent (60%) of the cash receipts to establish a fair market value.

25. In the written *Agreement for the Purchase and Sale of a Dental Practice*, executed by Plaintiff and Defendant (Exhibit 1), Defendant warranted that the financial information provided to Plaintiff was correctly and properly prepared in accordance with generally accepted accounting principles and the contents of financial information correctly reflected and fairly presented the financial affairs of the business.

4

26. Through an examination of Defendant's records by an accountant, Plaintiff has learned that accepted accounting principles were not followed and that the contents of the financial information did not correctly reflect the financial affairs of the business.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

27. Plaintiff incorporates paragraphs 1 to 26 as if fully set forth herein.

28. Plaintiff and Defendant were parties to an enforceable contract and had obligated themselves under the contract.

29. The contract is valid and its terms and conditions are enforceable.

30. Plaintiff performed under the contract in each and every respect.

31. Defendant failed to perform on his warranty that the financial information provided to Plaintiff was correctly and properly prepared in accordance to generally accepted accounting principles and the contents of financial information correctly reflected and fairly presented the financial affairs of the business.

32. Defendant's failure to perform his warranty constitutes a breach of the contract, which breach is material because Defendant did not substantially perform a material obligation required under the contract.

33. As a result of Defendant's breach, Plaintiff has been damaged in an amount to be proven at trial but which exceeds $75,000.00.

**SECOND CAUSE OF ACTION**
**FRAUD AND INTENTIONAL MISREPRESENTATION**

34. Plaintiff incorporates paragraphs 1 to 33 as if fully set forth herein.

35. On or about July 31, 2003, Defendant provided to Plaintiff inaccurate financial report documentation and records.

36. On or about May 7, 2004, Defendant provided to Plaintiff inaccurate statements of

5

the revenues generated by ToothWorks and Open Choice.

37. On or about September 16, 2004, through the executed *Agreement for the Purchase and Sale of a Dental Practice*, Defendant falsely represented to Plaintiff that the financial information provided to Plaintiff was accurate and correctly and properly prepared in accordance to generally accepted accounting principles and the contents of financial information correctly reflected and fairly presented the financial affairs of the business.

38. Defendant falsely represented to Plaintiff on July 31, 2003, and on May 7, 2004, that the businesses ToothWorks and Open Choice generated more income and revenue than they actually generated.

39. Defendant made these representations with the intent to induce reliance on his representation even though he knew that his representations were false when the representations were made.

40. Plaintiff justifiably relied on Defendant's representation which induced Plaintiff to purchase Defendant's dental practice and associated businesses for more than the fair market value of those businesses.

41. Defendant's misrepresentations caused Plaintiff injury and damages in the amount to be determined at trial.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

42. Plaintiff incorporates paragraphs 1 to 41 as if they are fully set forth herein.

43. Defendant made representations to Plaintiff during the negotiations to sell the dental practice.

44. Defendant supplied documents and information to Plaintiff which were false.

45. Defendant made representations to Plaintiff that the documents and information contained in the documents were accurate and that they reflected the true financial condition and financial transactions of the businesses.

6

46. Defendant did not exercise reasonable care or competency in obtaining or communicating true information to Plaintiff.

47. Plaintiff justifiably relied on Defendant's representations and those untrue representations proximately caused Plaintiff's injury and damages.

48. Such untrue or false representations caused Plaintiff's injury and damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. For breach of contract in the amount of at least $75,000.00;

b. For Plaintiff's damages as a result of Defendant's fraud and misrepresentation;

c. For punitive damages as a result of Defendant's fraud and misrepresentation;

c. For Plaintiff's damages as a result of Defendant's negligent representation;

d. For costs of this action including attorney's fees;

e. For pre and post judgment interest;

f. For such other and further relief as the Court deems proper.

Dated: February 23, 2006

_____
ERIC S. SMITH
Attorney for Plaintiff

## Jury Demand

Please take notice that, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in the above-entitled action.

DATED this 23rd day of February 2006.

_____
Eric S. Smith
Attorney for Plaintiff