1
2
3
4
5

**DAVID G. BANES, Esq.**
**O'Connor Berman Dotts & Banes**
**Second Floor, Nauru Building**
**P.O. Box 501969**
**Saipan, MP96950**
**Telephone No. (670) 234-5684**
**Facsimile No. (670) 234-5683**

**Attorneys for Defendant Todd Keith Johnson**

**F I L E D**
Clerk
District Court

MAR 1 7 2006

**For** The Northern Mariana Islands
**By**_____
(Deputy Clerk)

6
7

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN MARIANA ISLANDS

8
9
10
11
12
13

**ALAN STUART MARKOFF, D.D.S. dba**
**TOOTHWORKS and OPEN CHOICE,**

        **Plaintiff,**

    **vs.**

**TODD KEITH JOHNSON, D.D.S.,**

        **Defendant.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO. CV-05-0035**

**DECLARATION OF**
**DAVID G. BANES IN SUPPORT OF**
**MOTION TO STAY**

**Date : Munson, Chief Judge**
**Time : 9:00am**
**Judge :**
APR 1 3 2006

14
15
16
17

I, David G. Banes, declare under the penalty of perjury that following is true and based on my personal knowledge.

18
19
20
21

    a.    I attach on information and belief a true and correct copy with exhibits of the Complaint in *Johnson v. Markoff et al.* Civ. No. 2005-56947 pending in the District Court of Harris Texas. It was filed on September 1, 2005. This matter was filed two months later, on November 4, 2005.

22
23
24
25

    b.    As a result of our investigation of this matter, we believe the following persons are potential witnesses:

1

1.     Mr. Todd Johnson - who is a resident of Oklahoma.

2.     Mr. Alan Markoff - who is either a resident of or is domiciled in Texas but currently working here.

3.     Mr. John Ronan – current address is not known exactly but believed to be on the Mainland.

4.     Mr. Doug Siebert - Gleneden Beach, Oregon.

5.     Doug Siebert's son - Gleneden Beach, Oregon.

6.     Progressive Management & Associates - Skoki, Illinois.

7.     Mr. Markoff's accountant - Houston, Texas.

8.     Mr. Johnson's former bookkeeper who is a Filipina national last known to be working on Saipan.

9.     Million Dollar Dental Practices, Inc. - Oregon.

10.    Mr. Markoff's wife who on information and belief lives in Texas.

c.     The Purchase Agreement, attached as Exhibit 1 to Plaintiff's Amended Complaint, provides that Texas law shall apply. *Id.* at Section 12-8. That contract is also Exhibit 1 to the Complaint filed in Harris County, Texas which is attached hereto.

Dated this 17th of March, 2006.



David G. Banes

2

CAUSE NO. 2005 – 56947

| | | |
|---|---|---|
| TODD KEITH JOHNSON, D.D.S. | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| ALAN STUART MARKOFF, DDS, INC, | § | |
| ALAN STUART MARKOFF, and | § | |
| ALAN STUART MARKOFF D.D.S. | § | |
| d/b/a TOOTHWORKS - OPEN CHOICE | § | |
| | § | |
| **Defendant.** | § | 281TH JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, Todd Keith Johnson, D.D.S., and files this Petition, complaining

of Defendants, Alan Stuart Markoff, DDS, Inc., Alan Stuart Markoff, D.D.S. d/b/a Toothworks-

Open Choice, and Alan Stuart Markoff and for grounds would show as follows:

## DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure

190.3.

## PARTIES

2.     Plaintiff is Todd Keith Johnson, D.D.S., a resident of the State of Oklahoma.

3.     Defendant, Alan Stuart Markoff, DDS, Inc. is the maker of a promissory note held by Plaintiff. This Defendant is a resident of Houston, Harris County, Texas and may be served by serving its registered agent, Alan Stuart Markoff, at 4543 Post Oak Place, Suite 108, Houston, Texas 77027-3103.

4.     Defendant, Alan Stuart Markoff, D.D.S. entered into a contract for the purchase and sale of a dental practice as well as a consulting agreement with the plaintiff. This Defendant is a resident of Houston, Harris County, Texas and may be served with process at 31 Stillforest, Houston, Texas 77024-7518.

5.     Defendant, Alan Stuart Markoff, is an individual who resides in Harris County. He may be served with process at 31 Stillforest, Houston, Texas 77024-7518.

## VENUE

6.     Venue for this breach of contract and tort suit is proper in this county because it is the county of Defendant's residence at the time the cause of action accrued and was the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

7.     On September 16, 2004, Todd Keith Johnson, D.D.S. and the Defendant, Alan Stuart Markoff, D.D.S., entered into an agreement for the purchase and sale of a dental practice.[1] The agreement called for the payment by the Defendant of four hundred and fifty thousand dollars and

---

[1] Attached hereto as Exhibit 1 is a copy of the agreement which is incorporated by reference. The agreement provides for the application of Texas law (12.8).

no cents ($450,000.00) to the Plaintiff. Defendant paid four hundred thousand dollars and no cents ($400,000.00) to the Plaintiff and signed a non-recourse, non-negotiable promissory note with Alan Stuart Markoff, DDS, Inc as the maker in the amount of fifty thousand dollars and no cents ($50,000.00)[2] plus interest. Defendant made three (3) payments on the note and has refused to pay the additional amounts owed.

8.    On December 15, 2004, the parties entered into a consulting agreement[3] calling for Plaintiff to act as a consultant to the Defendant in exchange for a consulting fee of one thousand four hundred fifty dollars and no cents ($1,450.00) per month for sixty (60) months. Defendant made three (3) payments pursuant to his obligation on the consulting agreement and has refused to pay any additional amounts.

9.    According to the agreement for the purchase and sale of the dental practice (Exhibit 1), on the 15th day and the last day of each month the purchaser was to render an accounting to seller of seller's accounts receivables collected by purchaser. The agreement provided that the purchaser was to remit to the seller such amounts from the accounts receivables collected as reflected in Exhibit 1 at paragraph 9.2.2. Purchaser, the Defendant herein, has never paid these amounts to the Plaintiff, nor has he provided an accounting to the Plaintiff.

10.    Prior to the execution of the agreements made the basis of this lawsuit, the Plaintiff and the Defendants had retained the services of a broker. Defendant also retained the services of an accountant and had complete access to Plaintiff's accountant for well over a year. Plaintiff

---

[2]  Attached hereto as Exhibit 2 and incorporated by reference.

[3]  Attached hereto as Exhibit 3 and incorporated by reference.

provided full and complete disclosure to the Defendants, which disclosure was accurate in all respects.

## COUNT 1 - BREACH OF CONTRACT

11.    The Plaintiff and the Defendants were parties to an enforceable contract and had obligated themselves under the contract. The contract in question was valid and enforceable. The Plaintiff performed the contract in each and every respect and was entitled to receive payment from the Defendants. Plaintiff was entitled to receive payments pursuant to the note executed between the parties, he was entitled to receive payments pursuant to the consulting agreement executed between the parties, and he was entitled to receive payments pursuant to the accounting of receivables which were properly due him under the contract. Defendants' failure to pay these amounts constitutes a breach of the contract, which breach was material because Defendants did not substantially perform a material obligation required under the contract. Plaintiff's damages are a natural, probable and foreseeable consequence of the Defendants' breach.

## COUNT 2 - FRAUD

12.    One or more of the Defendants made false material representations to the Plaintiff which the Defendants knew were false or which the Defendants made recklessly, as a positive assertion and without knowledge of their truth. One or more of the Defendants made the representations with the intent that Plaintiff act on them and the Plaintiff did, in fact, rely on the representations and act on them by entering into the transaction in question. The representations caused the Plaintiff injury and damages for which he now sues.

P:\401\002\ORIGINAL PETITION.WPD                    4

## COUNT 3 - NEGLIGENT REPRESENTATION

13.     One or more of the Defendants made representations to the Plaintiff in the course of the

Defendants' business or in a transaction in which the Defendants had an interest.  One or more of

the Defendants supplied false information for the guidance of Plaintiffs.  These Defendants did not

exercise reasonable care or competency in obtaining or communicating false information for the

guidance of the Plaintiff.  The Plaintiff justifiably relied on the representations of the Defendants

and those misrepresentations proximately caused the Plaintiff's injuries and damages for which he

now sues.

## CIVIL CONSPIRACY

14.     At all times material to this suit, each Defendant was a member of a combination of two or

more persons or business entities, whose object was to accomplish an unlawful purpose or a

lawful purpose by unlawful means.  The Defendants had a meeting of the minds on the object or

course of action.  One or more of the Defendants committed an unlawful, overt act to further the

object or cause of action, and as a proximate result, the Plaintiff suffered damages.

## VICARIOUS LIABILITY

15.     The corporate form of Alan Stuart Markoff DDS Inc, should be disregarded because:

   a)     The form was used as a sham to perpetuate a fraud;

   b)     The corporation was organized and operated as a mere tool or business conduit of

          one of the other Defendants;

P:\401\002\ORIGINAL PETITION.WPD                    5

c) The form was used to evade an existing legal obligation;

d) The corporation was inadequately capitalized so as to work an injustice; or

e) Two or more businesses were operated as a single business enterprise.

In addition, the Defendant caused the corporation to be used for the purpose of perpetrating an actual fraud; and Defendant perpetrated an actual fraud on the Plaintiff primarily for the Defendant's direct, personal benefit.

## DAMAGES

16. The Defendant's breach of contract, fraud and/or negligent misrepresentations caused the following damages:

A. Nonpayment of the note - FIFTY-THREE THOUSAND TWO HUNDRED THIRTY SIX DOLLARS AND 43/CENTS ($53,236.43);

B. Nonpayment of the consulting agreement - EIGHTY TWO THOUSAND SIX HUNDRED FIFTY DOLLARS AND NO CENTS ($82,650.00);

C. Nonpayment of the receivables - an amount to be determined after an accounting; and

D. Failure to reimburse Plaintiff for accounts payable.

## ATTORNEY'S FEES

17. Plaintiff is entitled to recover reasonable and necessary attorney's fees under Texas Civil Practice and Remedies Code Chapter 38 because this is a suit on a written contract which provides for the application of Texas law.

## CONDITIONS PRECEDENT

18.    All conditions precedent have been performed, have occurred or have been waived.

## DEMAND FOR JURY

19.    Plaintiff hereby demands a jury trial and tenders the appropriate fee with this petition.

## PRAYER

20.    For these reasons, Plaintiff asks that the Defendants be cited to appear and answer and the Plaintiff have judgment against Defendants for the following:

    A.    Actual damages;

    B.    An accounting;

    C.    Exemplary damages;

    D.    Attorney's fees;

    E.    Pre-judgment and post-judgment interest;

    F.    Costs of suit; and

    G.    All other relief in law and in equity, to which Plaintiff may be entitled.

## REQUEST FOR DISCLOSURE

21.    Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose within fifty (50) days of the service of this request the information or material described in Rule 194.2(a)-(i)&(l).

Respectfully submitted,

FILTEAU & SULLIVAN, P.C.

Robert J. Filteau
State Bar No. 06997300
1634 Columbia Street
Houston, Texas 77008
(713) 236-1400 (Telephone)
(713) 236-1706 (Facsimile)

ATTORNEY FOR PLAINTIFF,
Todd Keith Johnson, D.D.S.

# AGREEMENT

## FOR THE
## PURCHASE AND SALE
## OF
## A DENTAL PRACTICE

## BETWEEN

## TODD KEITH JOHNSON, D.D.S.,
## DOING BUSNESS AS TOOTHWORKS & OPENCHOICE
## SELLER

## AND

## ALAN STUART MARKOFF, D.D.S.
## PURCHASER

**EXHIBIT**

1

# AGREEMENT
## FOR THE PURCHASE AND SALE
## OF A DENTAL PRACTICE

THIS Agreement for the Purchase and Sale of a Dental Practice (this "Agreement") is made effective the 16th day of September, 2004, by and between Todd Keith Johnson, D.D.S., doing business as ToothWorks & OpenChoice (hereinafter referred to as "SELLER"), and Alan Stuart Markoff, D.D.S. (hereinafter referred to as "PURCHASER").

### WITNESSETH:

WHEREAS, SELLER owns and operates a dental practice (the "Practice") doing business as ToothWorks & OpenChoice at Saipan Health Clinic, Chalan Kiya, Saipan 96950, Northern Marianas; and

WHEREAS, SELLER desires to sell to PURCHASER substantially all of the assets used by SELLER in the operation of such Practice (also sometimes referred to herein as the 'business"), all as more specifically provided for herein; and

WHEREAS, PURCHASER desires to purchase substantially all of the assets used by SELLER in the operation of the business; and

WHEREAS, the parties desire to reduce to writing their understandings concerning the sale and purchase of the assets.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and promises herein contained, the adequacy of which each party hereby acknowledges, it is hereby agreed as follows:

### ARTICLE I.
### SALE OF ASSETS AND PURCHASE PRICE

1.1 Sale of Assets. SELLER agrees to convey to PURCHASER, at the time of Closing, by bill of sale substantially all of the operating assets owned by SELLER which pertain to or are a part of the operation of ToothWorks & OpenChoice (the "BUSINESS") located at Saipan Health Clinic, Chalan Kiya, Saipan 96950, except the Excluded Assets as defined in Section 1.2 below, consisting of the following:

3

## Tangible Property

1.1.1    Dental Equipment- All dental units, lights, dental chairs, light curing equipment, hand pieces and the like, including without limitation those set forth in Exhibit "1.1.1" and Exhibit "1.1.2" attached hereto and made a part hereof, free and clear of all liens and encumbrances.

1.1.2    Office Equipment- All computer equipment and assignable software, telephone equipment, copy machines, fax machines owned by Seller, including without limitation those set forth in Exhibit "1.1.2" attached hereto and made a part hereof, free and clear of all liens and encumbrances.

1.1.3    Furniture and Fixtures- All of the furniture and fixtures and unattached decorations, sound systems, televisions and the like, and all leasehold improvements, including without limitation those set forth in Exhibit "1.1.2" attached hereto and made a part hereof, and a 1994 Honda Civic automobile, free and clear of all liens and encumbrances.

1.1.4    Clinical Supplies- All composite, impression materials, endodontic supplies, cotton and paper goods, preventive materials, and the like including without limitation those set forth in Exhibit "1.1.4" attached hereto and made a part hereof, free and clear of all liens and encumbrances. As of the date hereto the parties agree that the inventory of dental supplies has a value of $57,500.00. SELLER agrees that said inventory shall be in substantially the same composition and value on the date of closing as it existed on the date hereof.

1.1.5    Office Supplies - All of the office supplies, and other supplies presently being used in connection with operation of the business and on hand at the date of closing including without limitation those set forth in Exhibit "1.1.5" attached hereto and made a part hereof, free and clear of all liens and encumbrances. As of the date hereto the parties agree that the inventory of office supplies has a value of $10,000.00. SELLER agrees that said inventory shall be in substantially the same composition and value on the date of closing as it existed on the date hereof.

## Intangible Property

1.1.6    Telephone Number and Listing- All current telephone numbers utilized at the business location and all listings of such numbers.

1.1.7    Trademarks and Trade Names- All trademarks and trade names used or owned by the BUSINESS, including "ToothWorks" and "OpenChoice". PURCHASER and his successors and assigns shall be entitled to use the aforesaid names. SELLER shall not use either of such names or any variation thereof following the Closing

1.1.8    Contract Rights and Goodwill- All rights of SELLER under any contract relating to

4

the Practice, including without limitation any employment contract and any dental plan contract, and all of the goodwill and going concern value of the Practice.

1.1.9    Patient and Business Records.

(i) To the extent that SELLER can lawfully transfer whatever ownership it has in its patients' records, then on the Closing Date, SELLER shall give PURCHASER ownership and custody of all patient records of the Practice. PURCHASER shall hold such records in confidence except as may be necessary or appropriate in the treatment of patients who desire to be treated by PURCHASER, or as may be necessary and as requested by a patient, identify such records for transfer to another dentist at the written request of the patient; provided, however, that in such event, PURCHASER shall forward copies of such records and shall retain the original.  SELLER may make and retain copies of, and shall have reasonable access during normal business hours to any patient files or records:  (a) which are or may be relevant to any claim or defense SELLER may have against third persons in any action or proceeding concerning the conduct of the Practice prior to the Closing Date or (b) which are or may be relevant to SELLER'S liability for taxes in connection with or arising out of the conduct or ownership of the Practice prior to the Closing Date.

(ii) PURCHASER covenants and agrees that it will preserve and protect all patient records and office records of the Practice for such period of time as is required by applicable law.  PURCHASER shall make such records available to SELLER or his agents, upon prior written request, at all reasonable times and places for examination and copying, at SELLER'S sole expense, subject to applicable law and professional standards, to the extent required by Section 1.1.9(i).  Purchaser further covenants and agrees to give SELLER at least one hundred and twenty (120) days notice in writing of any intention to destroy any such files and records, and upon SELLER'S written request, SELLER shall be allowed to remove all or any of said files and records in accordance with state and federal laws. PURCHASER recognizes that such access by SELLER is required to defend any claim that may be brought against SELLER at some future date.

1.2    Excluded Assets.  The parties acknowledge and agree that PURCHASER is not purchasing and SELLER is not selling: the cash on hand and cash in the bank, the accounts receivable, any causes of action, and rights of action, refund claims, rent and utility deposits, if any.

1.3    Purchase Price.  PURCHASER agrees to purchase the BUSINESS and its assets listed in Article I hereinabove for the sum of Four hundred and fifty thousand Dollars ($450,000.00), allocated as follows:

1.3.1    Tangible Property. - For the assets described in Sections 1.1.1 to 1.1.5, the sum of Four hundred and five thousand dollars ($405,000.00), as further allocated as set

5

forth on Exhibit 5.3 attached hereto.

1.3.2   Intangible Property. - For the intangible assets described in Sections 1.1.6 to 1.1.9
plus the agreement not to compete provided for in Article IV hereof, the total sum of
Forty-five thousand dollars ($45,000.00), as further allocated in Article IV and on
Exhibit 5.3 attached hereto.

1.3.2   Reporting of Sale. It is agreed that the above allocations shall be reported by each
party, pursuant to Internal Revenue Laws and regulations or pronouncements of
Saipan, MP and the United States of America.

1.4   Employment Contracts. PURCHASER shall assume the obligations of SELLER
under any employment contract with an employee of SELLER, but only to the
extent that such obligations arise or accrue after the date of Closing. SELLER shall
remain responsible for all obligations under any such employment contract accruing
or arising on or prior to the date of Closing.

1.5   Dental Plan Contracts. PURCHASER shall assume the obligations of SELLER
under any dental plan contract with a patient of SELLER, but only to the extent that
such obligations arise or accrue after the date of Closing. SELLER shall remain
responsible for all obligations under any such dental plan contract accruing or
arising on or prior to the date of Closing.

1.6   House Leases. Subject to any required consent of the landlord, PURCHASER shall
assume the obligations of SELLER under that certain Rental Agreement Year-To-
Year Tenancy dated April 1, 2001 for the lease of a residence used by certain of the
staff (the "Staff House Lease") and under that certain Residential Lease Agreement
and Deposit Receipt dated October 2, 2003 for the lease of a unit used by Dr. Ronan
(the "Ronan Lease"), but only to the extent that such obligations arise or accrue after
the date of Closing. SELLER shall remain responsible for all obligations under
such leases accruing or arising on or prior to the date of Closing. PURCHASER
shall cooperate with SELLER'S efforts to obtain the release by the landlords of any
further liability of SELLER under such leases, and PURCHASER shall furnish a
new security deposit under the Staff House Lease so that the existing security
deposit may be returned to SELLER. The security deposit under the Ronan Lease
shall remain the property of SELLER and be payable to SELLER upon termination
of the Ronan Lease.

## ARTICLE II.
## PAYMENT OF THE PURCHASE PRICE

2.1   The Purchase Price. At Closing, PURCHASER shall deliver to SELLER in
immediately available funds the Purchase Price, namely, Four hundred and fifty
thousand dollars (US$450,000.00), as may be adjusted upward or downward for

6

prorations.

# ARTICLE III.
## REPRESENTATIONS AND WARRANTIES

3.1    SELLER represents warrants and agrees that the following are true and correct on
the date of this Agreement and will continue to be true and correct on each day until
and including the Closing as though made on and as of each day:

3.1.1    Financial Information - All financial information concerning SELLER'S business
provided to PURCHASER by SELLER, including but not limited to profit and loss
statements, balance sheets, position statements, income tax returns, and the like,
truly and correctly reflect and fairly present such of the financial affairs of SELLER
as they purport to represent; and said financial information was correctly and
properly prepared in accordance with generally accepted accounting principles
applied on a consistent basis and in accordance with applicable tax laws; and that no
material changes have occurred since the last of such statements or tax returns was
prepared or filed.

3.1.2    Lawful Owner, Marketable Title - SELLER is now and will at the date of closing
hereunder be the lawful owner of and have good, valid and marketable title to all of
the property of the business which it purports to own and which are being sold,
transferred or assigned by SELLER to PURCHASER hereunder; and all of said
property will be, at the time of closing, free and clear of any and all liens, security
interest, restrictions, limitations, charges and encumbrances. SELLER has and will
have at said time of closing good right, title and authority to sell, transfer and
convey the same as aforesaid; and SELLER will warrant and defend the same
against the lawful claims and demands of all persons whomsoever. Except for the
Excluded Assets, the assets, properties, rights and interests which are the subject of
this Agreement constitute all of the assets, properties, rights and interests used by
SELLER in the conduct of the business.

3.1.3    Authority - The execution and delivery of this Agreement, the consummation of the
transaction contemplated hereby and the compliance by SELLER with all provisions
hereof will not (i) violate any provision of the terms of any applicable law, rule or
regulation of any governmental body having jurisdiction; (ii) conflict with or result
in a breach or default under of any of the terms, conditions or provisions of, or
accelerate or permit the acceleration of the performance required by, any note, bond,
mortgage, indenture, license, agreement or other instrument or obligation of any
nature whatsoever to which SELLER is a party, or (iii) violate any order, writ,
injunction, decree, statute, rule or regulation applicable to SELLER for any of its
property or assets.

3.1.4    No Consent To Transfer - None of the properties or assets to be purchased by

7

PURCHASER hereunder is subject to any restrictions or limitations prohibiting the transfer contemplated herein, and no consent to such transfer is required by any individual or entity not a party hereto.

3.1.5 No Third Party Options. There are no existing agreements, options, commitments or rights with, of or to any person to acquire any of SELLER'S assets, properties or rights included in the Assets or any interest therein.

3.1.6 Inventory - SELLER'S inventory is of generally acceptable and usable quality and does not include a material amount of obsolete or unusable items.

3.1.7 Payment Of Debts - SELLER will pay or cause to be paid, all debts, taxes, staff payroll and related payroll taxes and liabilities of SELLER which are or might become the basis for any action, proceeding or investigation resulting in any order, injunction, or decree against SELLER.

3.1.8 Condition Of Equipment - The equipment, furniture and fixtures of the business are in good working order and repair, and will continue to be in good working order and repair as of the date of closing.

3.1.9 No Conflict With Agreements - Neither the execution and delivery of this Agreement by SELLER nor the consummation of the transactions contemplated hereby will, with or without the giving of notice or the passage of time, or both, conflict with, result in a breach of, accelerate any obligation under, constitute any default under or give rise to a right of termination of, any material agreement of which SELLER is a party of by which any of SELLER'S material assets or properties are bound or affected, or, to the best of SELLER'S knowledge, conflict with or violate any judgment, decree, order, statute or other provision of law or rule or regulation of any governmental body binding upon SELLER.

3.1.10 Expenditures - From and after the date hereof, SELLER will make no expenditures without the written consent of PURCHASER; provided, however, that there is excepted here from reasonable and customary purchase of inventory items necessary to carry on SELLER'S business through closing and to transfer to PURCHASER at closing inventory and other items sufficient for PURCHASER to carry on the business in its normal course.

3.1.11 Compliance With Law - To the best of SELLER'S knowledge, information and belief, SELLER has complied with all applicable laws, regulations and orders applicable to SELLER'S business and properties. SELLER has received no notice that its business or assets are in violation of any applicable governmental laws or regulations.

3.1.12 No Removal Of Assets - SELLER, from and after the execution of this Agreement to and including the date of closing, did not and will not remove or permit the

8

removal from its place of business any of the furniture, fixtures, equipment, inventory, patient files and charts, supplier lists, and stationery and advertising materials contained therein on said date, except for the sale and use of such items in the ordinary course of SELLER'S business.

3.1.13 Litigation –To the best of SELLER'S knowledge, information and belief, there is no action or proceeding, pending or threatened against SELLER before any court or before any governmental department, commission, board, agency, or instrumentality regarding the Practice nor does SELLER know, or have reasonable grounds to know, of any basis for any such action, or proceeding resulting in any order, injunction, or decree against SELLER.

3.1.14 Environmental Matters - To the best of SELLER'S knowledge, information and belief the business is not in violation of any applicable government regulations. SELLER represents and warrants that no notice has been received from any governmental agency directing SELLER to cure any alleged violation.

3.1.15 Employees - SELLER has delivered to PURCHASER true and correct copies of all employment contracts that SELLER has with any employee of SELLER. No notice of termination has been given by either party under any such contract. To the best of SELLER'S knowledge, information and belief, neither party is in default under any such employment contract, and each of such contracts may be terminated at the end its stated term without further obligation of SELLER or PURCHASER.

3.1.16 Dental Plan Contracts - SELLER has delivered to PURCHASER a representative example of SELLER'S dental plan contracts. None of the other dental plan contracts materially varies from the example delivered to PURCHASER. To the best of SELLER'S knowledge, information and belief, no default has occurred under any such dental plan contract, and no dental plan contract has been terminated by the patient since August 1, 2004.

3.1.17 Complete Representations - To the best of SELLER'S knowledge, information and belief, all material facts concerning the substance of this Agreement have been disclosed by SELLER to PURCHASER. No representation or warranty made by SELLER in this Agreement or any attachments hereto, nor any statement or certificate to be furnished or to be furnished to PURCHASER pursuant hereto, or in connection with the transactions contemplated hereby, contains or will contain any untrue statement, or omits or will omit to state a fact necessary to make the statements contained herein not misleading. SELLER is not involved in any undisclosed transactions, proceedings or investigations, including claims for unpaid taxes, which might materially or adversely affect the assets and/or rights and obligations which are to be the subject of the sale and/or transfer hereunder, and which would hinder or prevent the transactions contemplated by this Agreement.

3.1.18 Survival Of Warranties - The covenants, representations and warranties set forth

9

herein are made as of the date of execution of this Agreement, but SELLER agrees
that by the act of closing the sale and purchase hereunder, the said covenants,
representations and warranties shall be deemed confirmed as of the date of closing
and all such covenants, representations and warranties shall survive the making of
this Agreement and the closing for a period of one (1) year.

3.2     PURCHASER represents, warrants and agrees that the following are true and
correct on the date of this Agreement and will continue to be true and correct on
each day until and including the Closing as though made on and as of each day:

3.2.1   Full Power and Authority.  Neither the execution of this Agreement nor its
performance by PURCHASER will conflict with or result in the breach of any
mortgage, encumbrance, instrument, covenant, or other undertaking whatsoever.
No action by any governmental department, commission, board, bureau, or
instrumentality is necessary to make this Agreement a valid instrument binding
upon PURCHASER in accordance with its terms.

3.2.2   Litigation - To the best of PURCHASER'S knowledge, information and belief,
there is no action proceeding, or investigation pending or threatening against
PURCHASER before any court or before any governmental department,
commission. board, agency, or instrumentality regarding the business nor does
PURCHASER know, or have reasonable grounds to know, of any basis for any such
action. proceeding or investigation resulting in any order, injunction, or decree
against PURCHASER.

3.2.3   Knowledge Regarding SELLER'S Warranties - Except as may be specified in a
written notice from PURCHASER to SELLER at or prior to the Closing,
PURCHASER has no actual knowledge of any breach of any representation,
warranty or covenant of SELLER contained herein.

3.2.4   Survival Of Warranties - The covenants, representations and warranties set forth
herein are made as of the date of execution of this Agreement, but PURCHASER
agrees that by the act of closing the sale and purchase hereunder, the said covenants,
representations and warranties shall be deemed confirmed as of the date of closing
and all such covenants, representations and warranties shall survive the making of
this Agreement and the closing for a period of one (1) year.

## ARTICLE IV.
## AGREEMENT NOT TO COMPETE.

As a material inducement for PURCHASER to enter into this Agreement, SELLER shall
enter into the  Agreement not to Compete against the business for a ten-year period from the
date of Closing, all as more fully set forth on Exhibit "4.0" attached hereto and incorporated
herein by reference. Thirty-four Thousand Five Hundred Dollars (US$34,500.00) of the

10

purchase price shall be allocated to such Agreement not to Compete.

## ARTICLE V.
## CLOSING

5.1     Time and Place. - The closing of the transactions provided for herein (the "Closing") shall be held on October 15, 2004 at Wallis State Bank in Houston, Texas, or on such other date or at such other place as both parties may agree. The date on which the Closing occurs is sometimes referred to herein as the "Closing Date."

5.2     Transfer Instruments. - SELLER shall convey all property and assets of the business to be sold to PURCHASER by delivering to PURCHASER bills of sale and assignments as follows:

5.2.1   Bills of Sale. A bill or bills of sale in form satisfactory to PURCHASER executed and delivered by SELLER warranting SELLER to be the owner of and covering all equipment, inventory, tools, furniture and fixtures, supplies, telephone number and listings, and all other personal property being sold as described in Section 1.1 above;

5.2.2   Assignment of Lease. Assignment of the real estate lease for the southwest portion of the building known as Saipan Health Clinic Building complex in Chalan Kiya, Saipan between Health Professional Corporation, to be assigned to PURCHASER with the consent of the Landlord to such assignment and a release of SELLER from liability under such lease;

5.2.3   Other Assignments.   An assignment of the name ToothWorks & OpenChoice and any other assumed names under which the SELLER is doing business, and such other assignments and motor vehicle title applications and certificates as counsel for PURCHASER reasonably deems necessary for assignment and transfer to PURCHASER of the other assets as are being sold hereunder as assets of the business, together with any necessary consents from third parties to such assignments;

5.2.4   Other Documents- SELLER will, on or after closing, execute and deliver any other documents as may be reasonably necessary to transfer, or further perfect, title to the assets transferred to PURCHASER.

5.3     Closing Statement - At the time of closing, a closing statement shall be attached and made a part of this Agreement as Exhibit "5.3". The closing statement shall be signed by each of the parties and shall reflect any proration hereunder as the parties shall agree.

5.4     Deliveries at Closing.

11

5.4.1  SELLER'S Deliveries.

(i)  SELLER shall deliver possession of the premises to PURCHASER together with the keys to the premises.

(ii)  SELLER shall deliver to PURCHASER a certificate duly executed and delivered by SELLER confirming that SELLER'S covenants, representations and warranties set forth in the Agreement were true and correct as of the date of this Agreement and remain true and correct as of the Closing Date and that SELLER has complied in all material respects with all covenants of SELLER up to and through the Closing Date.

(iii)  SELLER shall execute and deliver to PURCHASER the documents listed in Section 5.2 above.

5.4.2  PURCHASER'S Deliveries.

(i)  PURCHASER shall deliver to SELLER a certificate duly executed and delivered by the PURCHASER confirming that PURCHASER'S covenants, representations and warranties set forth in the Agreement were true and correct as of the date of this Agreement and remain true and correct as of the Closing Date and that PURCHASER complied in all material respects with all covenants of PURCHASER up to and through the Closing Date.

(ii)  PURCHASER shall pay to SELLER in the form of immediately available funds the sum of Four hundred and fifty thousand dollars (US$450,000.00).

## ARTICLE VI.
## BOOKS AND RECORDS

PURCHASER acknowledges receipt of the SELLER'S income tax return for the years ended December 31, 2000, 2001, 2002 and 2003. In addition thereto, at any time prior to the date of closing, PURCHASER or PURCHASER'S representatives shall have full and complete access to SELLER'S books and records regarding the business during the years 2000 through 2004 including, but not limited to, journals, ledgers, balance sheets, profit and loss statements, federal and state income tax returns, purchase invoices, sales records, etc. SELLER shall make such records available to PURCHASER or PURCHASER'S representatives upon request during normal business hours of the SELLER.

## ARTICLE VII.
## LIABILITIES TO BE PAID BY SELLER AND PURCHASER

7.1  SELLER will, prior to or as soon after closing as is reasonably possible, pay all

12

ordinary operating expense liabilities of the business which are due and payable or accrued through the date of Closing which the parties acknowledge is the last day on which SELLER operated the business, on or before such date.

7.2     PURCHASER will, subsequent to closing, pay all ordinary operating expense liabilities of the business which become due and payable after such date on account of PURCHASER'S ownership and operation of the business, subject to the provisions herein including without limitation Article VIII hereof.

7.3     Nothing in this Agreement or otherwise shall constitute any agreement on the part of PURCHASER to assume any liabilities of any nature of SELLER; all liabilities of SELLER as of the date indicated above shall be the sole and complete responsibility of SELLER to pay, and SELLER agrees to pay all such liabilities timely and in full as they become due.

## ARTICLE VIII.
## PRORATIONS AND COMMISSIONS

8.1     Rent.  Rent shall be prorated from the date of the last payment to and including the date of Closing.

8.2     Other Prorations.  In the event that the public utilities are unable to make final readings at or about the Closing Date, the parties shall pro rate the utility bills for the month including the date of Closing.  The parties shall send letters to such utilities in substantially the form as attached as Exhibit 8.2 hereto.

8.3     Brokerage Commissions.  SELLER shall be responsible for any broker's or any other commissions that are due to any party with respect to the transactions contemplated by this Agreement, except that PURCHASER shall be responsible for any fees or commissions of any person or entity retained by PURCHASER, including, without limitation, Bruce J. Lowy.

## ARTICLE IX.
## ACCOUNTS RECEIVABLE

At Closing SELLER shall appoint Angelita Mamaril as SELLER'S attorney-in-fact for the limited purposes of opening any mail addressed to P.O. Box 504699, Saipan, MP 96950-4699, Todd Keith Johnson, D.D.S., ToothWorks, OpenChoice and/or Saipan Health Clinic, Chalan Kiya, Saipan 96950 or, which is received by PURCHASER so as to determine whether or not such mail constitutes correspondence addressed to SELLER or whether or not such mail contains payments for dental services provided by SELLER prior to Closing.

9.1     General Correspondence Addressed to SELLER.  PURCHASER shall promptly

-13

forward to SELLER all correspondence which the sender intended for SELLER, except for checks issued in payment for dental services rendered by SELLER.

9.2 Payments for Dental Services.

9.2.1 All checks or other payments for dental services rendered by SELLERS and received by PURCHSER shall be deposited into a separate bank account opened by PURCHASER at a bank of PURCHASER'S choosing.

9.2.2 PURCHASER shall render a semi-monthly accounting on the fifteenth (15th) day and on the last day of each month to SELLER of SELLER'S accounts receivable collected by PURCHASER. For the first three months following the Closing, PURCHASER shall remit to SELLER an amount equal to fifty (50%) percent of the accounts receivable collected. The remaining fifty (50%) percent shall be distributed to PURCHASER as a loan from SELLER to PURCHASER, repayable without interest no later than one year following the Closing. For the fourth through sixth months following the Closing, PURCHASER shall remit to SELLER one hundred percent (100%) of the accounts receivable so collected. This obligation on the part of PURCHASER to collect SELLER'S accounts receivables shall terminate six months from the date of Closing. Thereafter, SELLER shall be responsible for his own billing, and any payments received by PURCHASER shall be first applied to PURCHASER'S billing and then to SELLER. Insurance payments shall be applied as directed by the explanation of benefits statement submitted by the dental insurance company statements.

## ARTICLE X.
## CONTINGENCIES

10.1 PURCHASER'S CONTINGENCIES.The duty and obligation of PURCHASER to perform under the terms of this Agreement is expressly conditioned upon the occurrence of all of the following events (unless expressly waived in writing by PURCHASER); nonfulfillment of any of the following contingencies on or before the date of closing shall, at the option of PURCHASER, terminate and void the Agreement and any and all amounts heretofore paid by PURCHASER to SELLER shall be returned forthwith to PURCHASER. The contingencies are as follows:

10.1.1 REAL ESTATE LEASE- PURCHASER'S obligations hereunder are contingent upon the assignment to PURCHASER of SELLER'S lease of the real estate at Saipan Health Clinic, Chalan Kiya, Saipan 96950, Northern Marianas, concurrent with the Closing hereunder and the Landlord's consent to assignment.

10.1.2 SELLER entering into the AGREEMENT NOT TO COMPETE in substantially the form set forth on Exhibit "4.0" attached hereto.

10.1.3 All of SELLER'S representations and warranties shall be true and correct as of the

14

Closing, and SELLER shall have performed or complied with all of his obligations required to be performed or complied with at or prior to the Closing.

10.1.4 NO ADVERSE DEVELOPMENTS - There shall not have been any material adverse change in the assets or condition of the business, financial or otherwise (including without limitation, personnel, properties or relationships with employees, suppliers, customers or others) between the date of this agreement and the date of closing. A casualty loss, insured or uninsured, in excess of $5,000.00 shall be considered a material adverse change in the SELLER'S condition. SELLER agrees to operate and maintain the business in its regular course from the date of this agreement to closing, subject to the provisions herein.

10.1.5 FINANCING – PURCHASER shall have obtained financing for the Purchase Price on terms reasonably satisfactory to PURCHASER.

10.2    SELLER'S CONTINGENCIES.    The duty and obligation of SELLER to perform under the terms of this Agreement is expressly conditioned upon the occurrence of all of the following events (unless expressly waived in writing by SELLER; nonfulfillment of any of the following contingencies on or before the date of closing shall, at the option of SELLER, terminate and void the Agreement. The contingencies are as follows:

10.2.1 REAL ESTATE LEASE- SELLER'S obligations hereunder are contingent upon the Landlord's consent to assignment of SELLER'S lease to PURCHASER and the Landlord's release of SELLER from the obligations under such lease following such assignment.

10.2.2 PURCHASER entering into an AGREEMENT NOT TO COMPETE in substantially the form set forth on Exhibit "4.0" attached hereto.

10.2.3 All of PURCHASER'S representations and warranties shall be true and correct as of the Closing, and PURCHASER shall have performed or complied with all of his obligations required to be performed or complied with at or prior to the Closing.

10.2.4 SELLER shall have received the Purchase Price in the form of immediately available funds.

## ARTICLE XI
## DEFAULT AND REMEDIES

11.1    Default. In the event that either party hereto shall consider the other party to be in default or to have breached any of the terms of this Agreement, notice stating with particularity the manner in which such default is claimed shall be given in writing to the alleged defaulting or breaching party. In such event, the alleged defaulting or

15