DAVID G. BANES, Esq.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

FILED
Clerk
District Court

APR - 7 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Attorneys for Defendant Todd Keith Johnson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

ALAN STUART MARKOFF, D.D.S. dba
TOOTHWORKS and OPEN CHOICE,

  Plaintiff,

vs.

TODD KEITH JOHNSON, D.D.S.,

  Defendant.

CIVIL ACTION NO. CV-05-0035

DEFENDANT'S REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF A
MOTION TO STAY

Date:  April 13, 2006
Judge: Munson, Chief
Time:  9:00 a.m.

The Court should grant Defendant's Motion for a stay as there are "exceptional circumstance" requiring a stay under the *Colorado River* doctrine: this District is inconvenient as almost all of the witnesses are located on the Mainland in Texas, or nearby Oklahoma, or Oregon (there is perhaps only one non-party witness in this District); if this case proceeds, there will be piece-meal litigation; Texas law applies and perhaps most importantly, this suit is an impermissible "reactive" lawsuit and Dr. Markoff has engaged in forum shopping.[1] Alternatively, the Court should enter a stay under the so-called *Burford* doctrine as Texas has an interest in fraud cases and this Court should defer to Texas courts on issues related to Texas law.

---

1 Dr. Johnson adopts and incorporates by reference the definitions and abbreviations he used in his opening brief, Memorandum of Law In Support of A Stay filed with the Court on March 17, 2006.

1

# ARGUMENT

## I

### A District Court May Abstain From Jurisdiction Under Two Different (But Inter-Related) Doctrines Applicable Here

There are at least two applicable ways a matter may be stayed in federal court where there is a parallel state court proceeding.[2] A federal court may abstain from exercising jurisdiction over a case when federal adjudication would disrupt a state's efforts to establish a coherent administrative policy with respect to a matter of substantial public concern. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). A federal court may also abstain when there are concurrent state and federal suits, and abstention would promote sound judicial administration, including the conservation of judicial resources and avoidance of piecemeal litigation. *See Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

While *Burford* and *Colorado River* decisions "and the abstention doctrines derived from them, are analytically distinct, at least in theory, the lines between the two cases have been blurred." *Easter v. American West Financial*, 202 F.Supp.2d 1150, 1153 (W.D.Wash. 2002). *See also Fireman's Fund Ins. Co. v. Quackenbush* 87 F.3d 290, 297 (9th Cir. 1996) (applying both *Colorado River* and *Burford* doctrines). Or as stated by the Ninth Circuit:

> The various types of abstention are not rigid pigeon holes into which federal courts must try to fit cases . . . the important thing is to strike the right balance between the federal courts' obligation to exercise the jurisdiction conferred upon them and to soften the tensions inherent in a system that contemplates parallel judicial processes.

---

[2] In fact there are at least two other abstention doctrines not applicable here set forth in *Younger v. Harris*, 401 U.S. 37 (1971) and *Railroad Commission v. Pullman*, 312 U.S. 496 (1941).

2

*Gilbertson v. Albright*, 381 F.3d 965, 981-82 (9th Cir. 2004)(citations and quotation marks omitted).

While the origins of the abstention doctrines may lie in the limitations of federal equity jurisdiction, it is now well-established that they apply to actions at law as well. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1193 (4th Cir.1988). Moreover, the Supreme Court, in *Quackenbush v. Allstate*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), specifically stated that abstention is not limited to "equitable cases" but extends to damage actions as well. *Id.* 517 U.S. at 730-31, 116 S.Ct. 1712. Dr. Johnson will now address each of the doctrines as it applies to this matter in turn.

### A.

### A Stay Should Be Entered As There Are Exceptional Circumstances Under The *Colorado River* Doctrine

Dr. Markoff concedes that this suit and the Texas County Action are substantially similar and so the so-called *Colorado River* doctrine applies. Dr. Markoff also concedes that of the listed factors the first (jurisdiction over property) and the last (whether the state court proceeding is adequate) are not at issue here.

Instead, Dr. Markoff contends that: Saipan is as a convenient a forum as Texas; there is no federal policy that these claims should be handled by state courts; the filing of the Texas County matter first is not important; and while admitting Texas law is to be applied, it is not a significant issue. Dr. Markoff also denies having engaged in forum shopping although he admits he knew the Texas County matter was pending when he returned to Texas yet chose not

to take any action to defend that suit while he was there.[3] Declaration of Eric Smith, paras. 10 and 11.

However, as most witnesses are on the Mainland, this District is inconvenient; there will be piece-meal litigation and Texas courts do have a substantial interest in developing cohesive law as to charges of fraud as well as breach of contract cases which provide a selection of Texas law; the Texas County case was not only filed first but the initial discovery has already been completed; and the absence of any federal claim, coupled with the choice-of-Texas law provision in the contract should mean this matter should be decided by Texas courts. Finally Plaintiff has impermissibly engaged in forum shopping as well as actively evaded service of process.

### 1. Plaintiff Fails To Distinguish Between A Motion To Dismiss And, As Here, A Motion To Stay

To begin, Plaintiff makes much ado about the Court's "unflagging duty" to exercise jurisdiction but fails to recognize that Dr. Johnson is not asking the Court to dismiss this case, only to stay it for a certain period of time until the Texas County matter is resolved. As noted by both the Ninth Circuit and the United States Supreme Court this is a critical distinction:

> Unlike the outright dismissal or removal of a federal suit, . . . an order merely staying the action does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition.

---

3 It is curious to wonder why these assertions are made in Mr. Smith's declaration, not Dr. Markoff's.

*Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004)(quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721, 116 S.Ct. 1712 (1996)). This is an important distinction to bear in bear when analyzing the following factors.

### 2. This District Is Very Inconvenient

In support of his contention that this District is not an inconvenient forum,[4] Dr. Markoff makes two unsupported claims: that the "vast majority" of the witnesses and all of the relevant business documents are located in the CNMI. Importantly, Dr. Markoff fails to name these "vast majority" of witnesses.[5] Worse, such a representation is at odds with Dr. Markoff's responses to Dr. Johnson's discovery in the Texas County matter.[6] *See* Banes Decl. Exhibit 1 pp. 4-5. In the Texas Country case, Dr. Johnson asked Dr. Markoff to name any "persons having knowledge of relevant facts . . . with the case". *Id.* Of the four, non-party witnesses listed by Dr. Markoff, only one possibly living in the NMI:[7] Ms. Mamaril has no known address and the other three are in Oregon (Jane Seibert), Oklahoma (James Peters) and Texas

---

[4] Plaintiff cites without explanation to a Fifth Circuit case, *Kelly Investment Inc. v .Continental Common Corp.*, 315 F.3d 494(5th Cir.2003) as the standard for this factor without any citation to any 9th Circuit cases.

[5] Dr. Jonson just received Plaintiff's Initial Disclosures which lists a series of witnesses on Saipan. Dr. Johnson believes the Disclosures lists several persons and entities on Saipan which have very little relevant knowledge and fails to list witnesses on the Mainland who are important. *See* Affidavit of Todd Johnson filed herewith.

Dr. Johnson also notes that the Disclosures are very different from the witnesses Dr. Markoff disclosed in his discovery responses as well as an affidavit he submitted in the Texas County action. For instance, Plaintiff's Initial Disclosures lists many persons on Saipan as witnesses not stated as witnesses in his discovery responses and in an affidavit Dr. Markoff acknowledges that two entities located on the Mainland are witnesses -- but they are not listed on Plaintiff's Initial Disclosures here. *Id.* at paras. 21-27. *See* Banes Decl., para. 3.

[6] Dr. Markoff may contend that his suit is somehow different and so he has different, unnamed witnesses than the Texas County suit. This contention is undercut by: his concession that the two suits are essentially identical; his failure to specifically name any such witnesses; and that he has asserted fraud as an affirmative defense to the Texas County suit which is the gravamen of his suit here as well.

[7] However, Dr. Johnson's former bookkeeper Angie Mamaril's last known address is Saipan. But neither party knows if she is still here or not.

(David Washbarn) respectively. *See* Declaration of Counsel, Exhibit A.

### a. Most Of The Witnesses Are On The Mainland

Importantly, Dr. Markoff does not deny that the six additional persons identified by Dr. Johnson in his opening brief are indeed witnesses. These additional witnesses are:

John Ronan (Minnesota)

Doug Seibert and his son (Oregon)

Progressive Management (Illinois)

Mr. Markoff's accountant (Texas)

Mrs. Becki Markoff (Texas)

*See* Declaration of Counsel filed with Defendant's opening Memorandum of Law. Plaintiff instead contends that Doug Seibert is incapacitated. However, that leaves his son as a witness and counsel has recently learned that Mr. Seibert's daughter Laura Peters is also a witness. *See* Affidavit of Todd Johnson filed herewith, para. 4. Also, the company that each work for, Million Dollar Dental Practices ("MDP") the broker for this deal gone bad, has the documents related to the evaluation and appraisal of Toothworks. *Id.*, para. 1(a). Dr. Markoff then suggests that Progressive Management is not an important witness and any such on the Mainland testimony may be preserved by video tape. However, in an affidavit submitted to the Texas County matter, Dr. Markoff admits he consulted with MDP and Progressive Management. *See* Banes Decl., para. 2. Also, what about John Ronan? Becki Markoff? Plaintiff's Houston accountant, Mr. Lerner, who reviewed the so-called "fraudulent" documents? How about Doug Seibert's son? Plaintiff fails to address why these persons are not important witnesses.

### i. Defendant Has Leaned Three More Relevant Witnesses All On The Mainland

Further investigation by counsel has uncovered three additional witnesses: David Perry (Oregon), Laura Peters (Oregon) both who worked for MDP and Beverly Fortner of Wallis State Bank (Texas). Each has knowledge about the negotiation of the purchase agreement, especially as to the sale price as well as what documents were reviewed by whom. *See* Johnson Affidavit, paras. 1(a) and 4.

Also, this is an action for fraud and breach of contract in which Plaintiff claims the business records Dr. Johnson sent to him **in Texas** - - through MDP no less - - are fraudulent. Amended Complaint para. 11. Yet Plaintiff had the following persons review the documents and assist in the negotiation of the purchase: his accountant (Houston Texas), the two brokers (Oregon and Illinois) and a banker (Wallis Bank Texas). Hence, the most important non-party witnesses are all located in the Mainland. The one relevant witness who possibly lives in the NMI is not a CPA, she is a bookkeeper, and her role appears to be limited to keeping the books and transmitting records to Plaintiff in Texas. Also, as Plaintiff tacitly admits Ms. Mamaril's testimony could also be preserved by video tape.

Either one person travels to Texas, or over a dozen people travel to the CNMI (including all witnesses and Mainland counsel).

### b. The Business Records Are Also In Oklahoma, Perhaps Also Texas And Are Apparently Readily Transportable

As to the business records, according to the Amended Complaint they were sent from Saipan to Dr. Markoff in Texas through the Oregon broker MDP. Amended Complaint at para. 11. So either the records are in Texas still, could be in Oregon with MDP or even if here, there is apparently no problem as to transmitting them back and forth as they went from Saipan to Oregon to Texas and apparently back to Saipan. In any case, Dr. Johnson states he also has copies of what he believes to be the relevant business records with him in Oklahoma. *See* Johnson Affidavit, para. 2(a).

Additionally, there are other categories of documents relevant here. One is correspondence between the parties. This, fortunately was mostly by email while Markoff was in Texas and Defendant was in Oklahoma, and exists in cyberspace; accessible anywhere. The other are the documents with MDP used in fixing a sale price for the practice as well as the documents with Dr. Markoff's accountant in Houston Texas. *See* Johnson Affidavit, para 2(a)-(c).

### c. So What If Defendant *Used* To Live And Work Here; He Does Not Anymore While Plaintiff Still Does Live In Texas

As to Plaintiff's argument that Dr. Johnson lived and worked here previously, this is simply irrelevant as to whether or not this District is convenient or not. Even if applicable, this analogy can be turned right around: Dr. Markoff currently keeps at least a house in Texas, initially claimed he was a resident there, his wife still lives there and presumably he used to work there. It certainly will be less of a hardship for Dr. Markoff to defend in his home state of

Texas, where his family still lives, then for Dr. Johnson to now litigate back in Saipan where unlike Dr. Markoff, he does not have any family or residence.

In essence, stripped of rhetoric, Plaintiff's argument comes down to the NMI is convenient as he spends most of his time here (but admits he still goes to Texas - - presumably to visit his wife), that one witness who may or may not still be on Saipan is here and that business records which if here, are readily transferable to Texas and, in any event, are also located in Oklahoma with Dr. Johnson.

### 3. Piecemeal Litigation - - There Will Be Inconsistent Results If the Matter Is Not Stayed

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988).[8] Or as stated by the District Court of Hawaii:

> [T]he real danger in this case is the likelihood that some of the questions presented will be resolved by pretrial and prejudgment orders issued well before the judgment becomes final. These preliminary decisions would not be binding on subsequent determinations of the same issues in the other forum. Accordingly, there is a danger of inconsistent results.... Because the danger of contradictory and unfair

---

8 It must be noted that the Ninth Circuit has not been consistent as to the requirement of a federal policy. *See e.g. Nakash v. Marciano*, 882 F.2d 1411, 1413, 1415 (9th Cir. 1989). There the 9th Circuit affirmed the trial court's order staying the federal action in a matter alleging state securities law violations and fraud over a purchase agreement noting that the federal litigation was a "spin-off" of the pending state court action. The Court held that "[p]ermitting this suit to continue would undeniably result in piece-meal litigation." There is no discussion as to any federal policy as to deferring to state court fraud or breach of contract cases.

When faced with a similar discrepancy as to court of appeals decisions on the issue of when a stay is appropriate when deciding the piece-meal litigation factor, the Third Circuit decided it must follow its earlier decisions. *Ryan v. Johnson*, 115 F.3d 193, 198-199 (3rd Cir. 1997). *Ryan* is the same case cited with approval by the Ninth Circuit in Plaintiff's authority, *U.S. v. Morros*, 268 F.3d 695, 706-707 (9th Cir. 2001).

> results is a real possibility ..., the Court finds that the desire to avoid piecemeal litigation results from more than the inevitable duplication and inefficiency which routinely accompany parallel proceedings. This factor therefore strongly counsels in favor of dismissal or stay.

*Morisada Corp. v. Beidas*, 939 F.Supp. 732, 738 (D.Hawai'I 1995). Furthermore, to permit the federal action here would undermine Dr. Johnson's choice of forum and Dr. Johnson's choice of forum should be given due weight. *Id.*

### 4.     Not Only Was The Texas Case Filed First, It Has Progressed Further

Admittedly, Dr. Johnson's case was filed only a few months before Dr. Markoff decided to file suit here, but the initial phase of discovery has already been completed there. *See* Banes Decl. Exhibit 1. Certainly this factor has to favor abstention. But perhaps more importantly, as discussed below, it is not just that Dr. Johnson filed first but rather that Dr. Markoff is attempting to steal Dr. Johnson's choice of forum but filing a reactionary suit in a forum he hopes favors him.

As to any allegations of delay by Dr. Johnson, Plaintiff ignores that counsel requested a short extension from Friday (March 17) to Monday (March 20).[9] But more importantly, how exactly does a failure to file an answer by a few days justify an accusation of delay? It certainly does not change the fact that the Texas County action was filed first and that discovery is already underway there while not ever started here. Moreover, had Plaintiff not evaded service and forced motions and orders for substituted service in Texas, the Texas case would be even

---

9 Counsel believed the Motion and the Answer were both due on Friday March 17, 2006. As counsel was waiting to hear from Dr. Johnson in Oklahoma whether he approved of the draft Answer, counsel called Smith and Williams and left a voice message requesting a continuance until Monday just for the Answer. Counsel never heard back one way or the other.

further along. As Dr. Johnson filing a Motion to Dismiss, as it was granted, is Plaintiff really suggesting that filing a meritorious Motion was a delay tactic?

### 5. There Are No Federal Claims

Certainly if there was a federal question here, that would weigh heavily against abstention. *See Moses H. Cone Mem'l. Hosp. V. Mercury Constn. Corp.*, 460 U.S. 126, 103 S.Ct. 927 (1983)("[T]he presence of federal law issues must always be a major consideration weighing against surrender"). But instead, as Plaintiff even admits, this matter will substantively be controlled by Texas *state* law. Hence, there are only Texas law issues. This is an example of where the Court should respect the doctrine of comity set forth in *Burford, supra* and *Colorado River* and its progeny and allow the Texas state courts to decide issues of Texas law.

### 6. This Case Is An Impermissible Attempt To Steal Dr. Johnson's Choice Of Forum - - Which Is Plaintiff's Home State - - Anyway From Defendant

Dr. Markoff has either engaged in forum shopping or filed this suit as a reaction to the suit in Texas in all likelihood, he has done both. As these two factors are related, Defendant will address them together.

#### a. This Suit Is In Response To Defendant Filing Suit In Texas

This reactive-litigation as a factor was first noted by the Supreme Court in *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.* 460 U.S. 1, 17, N. 20, 103 S.Ct. 927 (1983). The Court noted that the Seventh Circuit had on remand from the Supreme Court continued a stay finding that :

> the filing of the federal suit was a "defensive tactical maneuver" based on a contrived federal claim; hence, a stay was called for as "a means to deter vexatious use of the federal courts." . . . *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1234-1236 (7th Cir. 1979), *aff'g* 459 F.Supp. 859 (ND Ill.1978). . . . The Court of Appeals in this case relied on similar reasoning. It concluded that, despite chronological priority of filing, the Hospital's state-court suit was a contrived, defensive reaction to Mercury's expected claim for relief and for arbitration. 656 F.2d, at 944-945.
> **The reasoning of the Courts of Appeals in this case and in *Calvert* -- that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River* --has considerable merit.** (emphasis added).

Consequently, federal courts have also used this factor in their analysis for purposes of the *Colorado River* doctrine analysis. *See, e.g., Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 534 (1st Cir.1991) (holding that a district court did not abuse its discretion when considering the reactive nature of the federal claim and that that forum shopping occurs where a state court defendant rushes "over to the federal courthouse in the hope of obtaining a more favorable determination"); *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 213 (7th Cir.1988)(recognizing that the Colorado River doctrine is necessary to "ensure judicial economy and deter abusive 'reactive' litigation"). A reactive litigation "is one brought in a federal forum by the state court defendant, thus reversing the roles of the parties to the litigation." *RyderTruck Rental, Inc. v. Acton*, 554 F.Supp. 277, 281 (D.C.Cal.1983).

This suit itself strongly suggests it is reactive in nature. Dr. Markoff also admits he owes Dr. Johnson money for the balance of the contract. A litigant does not normally file a suit, even for fraud, when one owes money to another unless one knows that they are already being sued or about to be sued. This suit really is a compulsory counter-claim in the Texas case - - Dr. Markoff has asserted fraud as an affirmative defense in the Texas County suit. Such suspicion

ripens into conviction when one considers Plaintiff has admitted he filed this case only after finding out about the Texas County action. *See* Declaration of Eric Smith, paras. 10-12.

Plaintiff tries to explain away the reactive nature of this suit by arguing that Plaintiff first tried to resolve this dispute by letter in February, April and May. *Id.* at para. 9. However, Dr. Markoff admits there was no further communication between the parties since May. So if Plaintiff was serious about suing first (which goes against common sense as he owes money to Defendant) why wait seven months (from February until November 2005)? Plaintiff does not say. On the other hand, Dr. Johnson was owed money, settlement negotiations never got started, it is common sense that he would be eager to file suit and he did so in Markoff's home state on the advise of a lawyer. *See* Johnson Affidavit, para. 28. What is wrong with that?

Rather remarkably, Plaintiff expresses surprise that Dr. Johnson, an Oklahoman, sued Dr. Markoff, a Texas resident, over a contract negotiated between Texas and Oklahoma and then applies Texas law, in Texas. Really? Oklahoma is how far from Texas versus the CNMI? He further expresses incredulity that Johnson tried to have him (Markoff) served in Texas rather than Saipan. If an Oklahoman is going to sue a Texas resident in Texas, over a Texan contract and he knows that resident will be in his house in Texas on a date certain, the Oklahoman should instead try to have the Texan served in Saipan? Hmmm... To the extent this argument has any weight at all, it evaporates when compared with Plaintiff's active avoidance of service and inexcusable delay in going to Court.

### b. Mr. Markoff Has Engaged In Forum Shopping

The Ninth Circuit has also added that another factor to consider is forum-shopping. *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir.1988); *Nakash v. Marciano* 882 F.2d 1411, 1417 (9th Cir.,1989) ("The final factor to consider is whether the second suit by Nakash is an attempt to forum shop or avoid adverse rulings by the state court. . . . . This factor weighs strongly in favor of abstention"); *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir.2002); *Enfission, Inc. v. Leaver*, 408 F.Supp.2d 1093, 1098 (W.D.Wash. 2005). *See also Fireman's Fund Ins. Co. v. Quackenbush* 87 F.3d 290, 297 ("We have recognized that forum-shopping can in some cases justify *Colorado River* abstention"); and *Morisada Corp. v. Beidas* 939 F.Supp. 732, 738 (D.Hawai'i,1995) (finding that forum shopping is a valid reason to stay a federal proceeding).

### i. Plaintiff Avoided Service Of Process While He Was In Texas

It is significant to note that in response to the allegation of forum-shopping, particularly as to Dr. Markoff actively avoiding service, Dr. Markoff admits he knew that Dr. Johnson had filed suit in September 2005, that he went to Texas anyway, yet he took no steps to respond to the Complaint there. Even more importantly, Dr. Markoff does not deny he gave directions to the process server, that he then hid in his house and refused to answer the door. Dr. Markoff's admission that he knew on September 28 about the Texas case and he only decided to file suit here on November 4, 2005 coupled with Dr. Markoff's failure to challenge under oath the declaration of Mr. Lyles should lead this Court to the conclusion that Plaintiff filed the suit here in reaction to the Texas County suit and is an attempt to gain an advantage through forum shopping.

It is unclear what advantage Dr. Markoff is seeking by filing here, without conducting discovery. But consider this: he chose to file suit here knowing Dr. Johnson had filed suit some three months before; he traveled to Texas yet he took no steps to defend the action there; instead he actively sought to evade service in Texas; he is either a resident or domiciled in Texas; his family still lives there; and the contact provides Texas law shall apply. So why not litigate in Texas? Instead, Dr. Markoff has now asked the Texas County suit to be stayed in favor of this proceeding. These facts lead to the conclusion that Dr. Markoff believes he gains some tactical advantage by litigating here rather than Texas. As such, he has engaged in impermissible forum shopping. As the Ninth Circuit has expressed a desire to discourage such practices, this matter should be stayed.

### 7. In Sum, ALL Five Of The Applicable Factors Favor Abstention

In sum, under the *Colorado River* doctrine, this Court should stay this suit as all of the relevant factors weigh in favor of a stay but especially, Plaintiff should not be rewarded for evading service of process and forum shopping.

### B.
### Abstention Is Also Proper Under The Burford Doctrine

As explained earlier, another line of abstention that the Court should consider is the *Burford* doctrine especially as the doctrines of abstention are flexible; as expressed by the Ninth Circuit in considering the various abstention doctrines: "Fortunately, the right pigeon hole is not crucial." *Gilbertson*, 381 F.3d at 981. Additionally, the case-law under *Colorado River* emphasizes that the court should be pragmatic, that no list is exhausted and the doctrine is

intended to be flexible to accomplish its stated purpose of balancing federal interests with respect for comity of state court proceedings. Therefore, Defendant will set out the general principle of the *Burford* doctrine to either be considered separately or in conjunction with the *Colorado River* analysis above.

In *Burford v. Sun Oil Co.*, the Supreme Court held that a federal court may abstain from exercising jurisdiction over a case where federal review would disrupt a state's ability to administer local affairs which are of great interest to the state. 319 U.S. 315, 332-34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[10] *Burford* abstention is generally implicated when a federal court determines that the federal interest in retaining jurisdiction over a dispute properly before it is outweighed by the state's interest in adjudicating the issues in its own forum. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

In arriving at the decision to abstain, the federal court "balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem." *Id.* The Supreme Court's precedents "do not provide a formulaic test for determining when dismissal under *Burford* is appropriate." *Id.* Nevertheless, the general concern that should inform a federal court's discretion is clear enough: Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the "independence of state action,"

---

10 *Burford* was initially only applied to state administrative proceedings but such a requirement was later dropped by the Supreme Court in *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723-31, 116 S.Ct. 1712 (1996). *See also First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 351 N.. (4th Cir. 2002)(Noting that *Burford* is not limited to state administrative agencies).

16

*Burford*, 319 U.S., at 334, 63 S.Ct. 1098, that the State's interests are paramount and that dispute would best be adjudicated in a state forum. *Id.* at 728, 116 S.Ct. 1712.

Courts should abstain from deciding cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or whose adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed. 298 (1989)(quoting *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

Here, we have a Texas domiciliary and an Oklahoma resident who negotiated a contract in Texas and Oklahoma, which provided for Texas law to be applied to any dispute. The matter is now in dispute and the matter was first filed in Texas - - Plaintiff's home state. Fraud is a serious charge and could lead to criminal charges being filed against Dr. Markoff (or Dr. Johnson). A Texas court has substantial interest in maintaining uniform treatment of such potentially serious matters. Why not leave it to the Texas state court to apply and decide issues of Texas law as between a Texan and an Oklahoman? *See e.g. Todd v. DSN Dealer Service Network, Inc.*, 861 F.Supp. 1531 (D.Kan. 1994)(Following the *Burford* doctrine, the Kansas District Court decided to abstain from jurisdiction and remanded back to state court a proceeding that had been previously removed to federal court that involved a suit for *inter alia* breach of contract, breach of fiduciary duty, negligence and fraud).

## CONCLUSION

In conclusion, the decision whether to stay a federal action does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case. Upon review, this Court should find that the "exceptional" circumstances required for *Colorado River* or *Burford* deference exist. Indeed, five of the seven factors significantly favor granting a stay. These factors include most of the witnesses are located on the Mainland making this District extremely inconvenient; the desirability of avoiding piecemeal litigation; the order in which jurisdiction was obtained (especially the concern over this case being filed in reaction to the Texas County Action, and regard for Dr. Johnson's choice of forum); the applicability of which rules of decision govern (Texas); and the prevention of forum shopping. Of the remaining two factors, none of them merit any weight in this determination. As a result, this Court should stay its exercise of jurisdiction.

Dated: April 7, 2006.

Respectfully submitted,

O'CONNOR BERMAN DOTTS & BANES
Attorneys for Defendant Todd K. Johnson

By: _____
DAVID G. BANES