DAVID G. BANES, Esq.
O'Connor Berman Dotts & Banes
Second Floor, Nauru Building
P.O. Box 501969
Saipan, MP 96950
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

F I L E D
Clerk
District Court

APR 10 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Attorneys for Defendant Todd Keith Johnson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ALAN STUART MARKOFF, D.D.S. dba TOOTHWORKS and OPEN CHOICE,<br><br>Plaintiff,<br><br>vs.<br><br>TODD KEITH JOHNSON, D.D.S.,<br><br>Defendant. | CIVIL ACTION NO. CV-05-0035<br><br>AMENDED DECLARATION OF TODD K. JOHNSON IN FURTHER SUPPORT OF MEMORANDUM OF LAW OF A MOTION TO STAY<br><br>Date : Munson, Chief Judge<br>Time : April 13, 2006<br>Judge : 9:00 a.m. |

I, Todd Keith Johnson, swear under the penalty of perjury that following is true and based on my personal knowledge.

1. Currently, I believe the key witnesses, besides myself and Dr. Markoff, to this case and the Texas County case are:

   a. **Million Dollar Dental Practices** ("MDP") located in Oregon which performed an appraisal of Toothworks and Open Choice and negotiated the sale of these businesses to Dr. Markoff. Even if Doug Seibert is ill, his son Jim and his daughter Laura have knowledge of this matter (Doug insisted I "cc" each of them in my reply correspondence and referred to

1

Jim and Laura as a part of the "team". Additionally, MDP should have all the relevant documents related to the appraisal and correspondence during the negotiation of the sale of Toothworks. Also David Perry who worked for or with MDP appeared to me to be the actual "numbers cruncher." And so he may be one of the most important witnesses to this matter.

b. **John Ronan**, Minnesota, a proposed business partner of Dr. Markoff who ran my business for about a year during the negotiations for the sale of my businesses, had full access to Open Choice's and Toothworks' financial records including my daily production sheets.

c. **Mr. Lerner**, Houston Texas, who is I believe Dr. Markoff's accountant who reviewed all of Toothworks' and Open Choice's documents during the negotiations for the sale of Toothworks and drafted some portions of the documents that were part of the purchase agreement.

2. I believe the most important documents are the following:

a. Toothworks' and Open Choice's financial records which are located on Saipan but copies were sent to Dr. Markoff in Texas and may still be with Dr. Markoff's accountant in Texas. I also have copies of most of the documents as well with me in Oklahoma.

b. MDP's records which are located in Oregon.

c. Correspondence between myself, Dr. Markoff and our lawyers, located either in Texas or with me and my lawyer in Oklahoma.

# BACKGROUND

**The Hiring Of MDP**

3. Sometime in 2003, I decided to sell my dental practice here in the NMI, in part because my parents' health was and still is declining and they needed me to run the family business here in Oklahoma.

4. I hired MDP located in Oregon which on information and belief is principally run by Doug Seibert and his son Jim and daughter Laura Peters. But as stated earlier, I believe Dave Perry was the person who actually "worked the numbers" to come up with a sale price. I believe Doug was more the "pitch-man" for MDP. I have no knowledge if Doug is truly ill or not. But I believe Mr. Perry is probably a more important witness than Doug for this suit.

5. MDP put me into contract with Alan Markoff who was living in Texas.

6. MDP suggested I hire John Ronan, who was interviewed by Dr. Markoff and later became a proposed partner of Dr. Markoff to run my practice so that I could return to Oklahoma, which I did.

**MDP Thoroughly Investigated Toothworks**

7. In order to put a value on the sale of the practice, MDP did a thorough investigation of my practice here, including all of Toothworks' and Open Choice's documents. Jim Seibert actually flew to Saipan as part of this appraisal. *See* Exhibit A, the contract between me and MDP which specifically states Jim would fly to Saipan in order to "complete [a] comprehensive practice analysis and media marketing package". At some point Doug Seibert turned the sale of Toothworks over to his daughter Laura Peters.

8. Through MDP, I continued to negotiate a purchase price with Dr. Markoff.

9. In fact, for a while Jim Seibert and Dr. Markoff together proposed to buy Toothworks.

**Dr. Markoff Expected Any Litigation To Be In Texas**

10. It was Dr. Markoff who insisted on having Texas law apply and having the choice of Texas-law inserted into the Purchase Agreement. He explained to me that he only planned to spend some of his time in Saipan, that is why he decided to keep his wife and house in Texas and insisted on having Dr. Ronan run Toothworks on Saipan full-time. He, Dr. Markoff would just make periodic trips to Saipan and supervise Dr. Ronan and the practice from Texas. He also had concerns about the health facilities on Saipan (he even briefly called the deal off due to such concerns) and the lack of acceptable social activities.

**- - As Did Plaintiff**

11. At Dr. Markoff's request, I had my bookkeeper Angie Mamaril send to him in Texas all the financial records he requested.

12. I know Dr. Markoff used an accountant in Houston to review all of Toothwork's and Open Choice's financial documents. I believe his name is Mr. Lerner.

13. Dr. Markoff also hired a lawyer in Texas and I a lawyer in Oklahoma to assist in the negotiations.

14. These negotiations took over a year (from about July 2003 until December 2004).

**Dr. Ronan Is An Important Witness**

15. During this time, John Ronan ran my practice and had access to all of the financial records. I understand Dr. Markoff promised to make Dr. Ronan a partial equity owner in the practice if the sale was completed. From my conversations with Dr. Ronan I know he was keeping a close watch on the practices' finances as he wanted to be a part owner. Dr. Ronan was granted full access to Toothworks' financial records and everyday he reviewed the daily production records of both Toothworks and Open Choice. So I believe he is a key witness. Once he bought the business, Dr. Markoff fired Dr. Ronan.

16. I understand Dr. Ronan lives now in Minnesota, I will find out his address by tracking his dental license and a friend of mine may know where he is. But I also believe Dr. Markoff knows where he is.

**Wallis State Bank Is Also An Important Witness**

17. Dr. Markoff I believe had to obtain a loan in order to pay the purchase price.

18. I believe Dr. Markoff tried to obtain loans from banks on Saipan but was unsuccessful.

19. I believe he did obtain a loan from Wallis State Bank located in Texas. I have correspondence from Beverly Fortner of that bank. From these letters, I understand the Bank reviewed many if not all of Toothworks' relevant financial records. For instance, in September 2004, several months before Dr. Markoff signed the purchase agreement, Ms. Fortner wrote:

> The year to date profitability figure I have on the practices are significantly lower than the results in Dr. Johnson's tax returns. Do you [Dr. Markoff] know of any reason for this?

1  From that same letter, I gather she also reviewed MDP's appraisal report as she requested another copy as "several pages" were "blurred". I attach as Exhibit B a true and correct copy of the email which Dr. Markoff forwarded to me.

**Progressive Management Consultants Is Also An Important Witness**

20. Once we were close to closing the deal, Dr. Markoff insisted we hire Bruce Lowry of Progressive Management Consultants who then drafted the final purchase agreement with input from our lawyers but also Dr. Markoff's accountant, Mr. Lerner.

21. Mr. Lowry is a witness as he suggested the deal be re-structured at least in part so that Plaintiff could get a loan by taking some of the purchase price and making it a "consulting agreement".

**Plaintiff's Initial Disclosures Are Not Accurate**

22. I have reviewed Plaintiff's Initial Disclosures. I believe it is not a fair statement of witnesses as it fails to include MDP, Progressive Management Consultants and Wallis State Bank. For instance, Dr. Markoff in the Texas County case admits MDP and Progressive Management Consultants are witnesses but fails to disclose them to this Court. *See* attached Affidavit attached to Banes Decl. Because each is on the Mainland?

23. As to the witnesses listed in Plaintiff's Initial Disclosures, I do not know why Bank of Hawaii, First Hawaiian Bank or Bank of Guam are listed as witnesses (other than they are located on Saipan). Perhaps Dr. Markoff tried to obtain loans there. But to my knowledge none of those banks had anything to do with the negotiation or sale of Toothworks or Open Choice. Significantly, Plaintiff failed however to list Wallis State Bank which I understand actually gave the loan. Perhaps because it is in Texas?

24. As to Scott Magliari, neither he or his firm were ever Toothworks' accountants while I was there. I do not know why he is listed as a witness.

25. As to Carol Galanza, she was my chair-side dental assistant (she is a dentist licensed in the Philippines) and to my knowledge had nothing to do with the operation of Toothworks, its financials or the negotiation or sale of Toothworks and Open Choice. Is she listed because she lives on Saipan?

26. Delgadina Sablan was the office manager of Toothworks but her knowledge of the financial operations or the sale of Toothworks would be very limited. Again I do not believe she will be a significant witness.

27. Flor Urena was a bookkeeper for Toothworks but only after I went to Oklahoma. So she does have some knowledge about Toothworks' financial records but only for a very limited time period.

28. Angelina Mamaril was Toothworks' head bookkeeper and she does have relevant knowledge for this matter and of the staff of Toothworks, I believe she is the only real witness listed in Plaintiff's Initial Disclosures. But I do not know where she currently works or resides or even if she is on Saipan still - - Dr. Markoff fired her.

**It Would Very Difficult For My Family And If I have To Litigate In Saipan**

29. It would be a tremendous hardship on me and my family if I had to litigate this case in Saipan. Texas is already burdensome enough. I sued there as my lawyer in Oklahoma

1 said I had to since Dr. Markoff was a resident in Texas. My parents are not well and I have to
2 take care of them and I now run the family business - - the very reasons I left my profitable
3 practice on Saipan to start with.

4     30.     I have no family or residence in Saipan. I do no business there anymore and I
5 have not been back there since I left in 2004.

7 Dated this _09_ April, 2006.

_____
Todd Keith Johnson

County of _____ )
State of _Oklahoma_ ) s.s.
Oklahoma _____ )

On this _09_ day of _April_, 2006, before me, a Notary Public in and for Oklahoma personally appeared Todd Keith Johnson known to me to be the same person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his own free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hands and affixed my official seal the day and year last written above.

_____
Notary Public

my commission expires 08-13-2008
my commission number #000 11539

2425-04-060707-PL-AmendedTKJDecl-rcr

July 21, 2003

Dr. Todd Johnson
Saipan

Dear Todd:

This letter is an understanding of our working agreement. All services are contracted with us in the State of Oregon. A faxed signature is as valid as an original. Each provision of this service agreement shall be independently valid of the others.

We will provide you the following services in two phases:

### Phase I – Finding associate and practice sale marketing budget

a. We will find you associate coverage for your dental practice and you agree to stay in your practice for no less than two and one-half months from our receipt of your first payment below
b. Jim Siebert will travel to your practice to complete comprehensive practice analysis and media marketing package and he will do most of the education of prospect buyers
c. We will complete a comprehensive appraisal and buyer packet that is accurate, complete and convincing -- one that will withstand the scrutiny of the buyer and buyer's accountant, attorney and banker
d. We will create a secure website by James Peters that will promote the associate coverage and practice sale, secure confidentiality as much as possible, require prospects to execute a confidentiality agreement before disclosing the location and the confidential details of the practice
e. We will market the website and drive traffic through the following:
    - A professional marketing design and advertising placement plan by Laura Peters
    - A direct mail program to US and Canadian dentists who have residency outside of the US and Canada
    - A direct mail program to a select list of US and Canadian dentists in depressed areas of the US and Canada and a select list of highly likely prospects
    - An electronic email program from a select list of highly likely prospects
    - Display and classified ads in various publications – US and Canadian dentists in the military – Hawaii – Utah – Idaho – California – Washington – Vancouver, British Columbia – Toronto, Ontario – American Dental Association – Canadian Dental Association – Various selected other publications and dental schools, societies and institutions

For Phase I services you will pay us a total of $40,000 payable as follows:

a. $25,000 by bank wire transfer which we will likely make non-refundable financial commitments for travel, website and other marketing commitments immediately, most of which will occur prior to Jim Siebert's visit to Saipan
b. $15,000 balance during Jim Siebert's visit to Saipan

**Exhibit "A"**

### Phase II – Completion of practice sale or an acceptable alternative approved by Todd Johnson

a. Our mutual goal will be to achieve a sales price of $700,000 or higher, with a minimum price of $600,000. We will complete the sale of your dental practice at terms acceptable to you. Further, you shall have the right to modify your transition goals and options (paragraph "c." below) if a total sales price of at least $600,000 is not deemed feasible by you after one year.
b. We will provide technical support to your attorney for your practice sales agreement and closing of your practice closing with the buyer
c. Acceptable options that are agreeable to us include, but are not limited to the following:
   - Keeping the practice and returning back to work or managing the practice
   - Leasing the practice
   - Selling a partnership interest in the practice
   - Selling or entering into a long-term contract to manage the practice to a person other than a licensed dentist
   - Hiring us to manage your practice for a period of up to three years from the date above
   - These are not obligations, but options that require mutual agreement of the parties

For Phase II services, you will pay us $50,000 as follows:

$50,000 at the closing of the practice sale if sold for all cash; or

$50,000 proportionately to the amount of cash received compared to the total agreed sales price (or alternative mutually acceptable option above) at the same rate of interest and security that you are receiving from your buyer; except that there shall be a balloon payment to us by you three years from the date above for any unpaid portion of the $50,000 fee on that date

We will work together through each of the two phases until each phase is completed. This service agreement will continue until the two phases of service above are completed but said continuance shall not exceed three years from the date above without mutual agreement. We shall be entitled to complete our work for the two phases.

You may terminate this service agreement with us at any time and for any reason, under the following terms and conditions:

(a) You provide written notice of termination to us at PO Box 880, Gleneden Beach, OR 973888; and

(b) All unpaid fees owed to us are paid in full.

Should there be any disagreement over the amount of the fees, we both agree to invest the necessary time in meetings and communication between the two of us to arrive at a fair fee. It is agreed that a fair fee shall not be less than our hours worked multiplied by $200, plus costs expended by us on your behalf. However, under no circumstances shall our total fee exceed $90,000, less amounts previously paid by you. If after two conferences within 60 days of your written notice of termination, we cannot come to an agreement, both of us further agree to mediation within 30 days thereafter to arrive at a fair fee for termination of the service agreement.

**Additional Provisions:**

1. We will send you copies of all marketing materials and a short explanation on how it was used (i.e. where it is placed, circulation, and duration).
2. We will provide you a copy of all emails sent and all direct mail sent with information on who is getting them.
3. You will be kept informed as to what is going on and how you are being represented by us.

Agreed:

_____
Doug Siebert, President, Million Dollar Dental Practices, Inc.

_____
Dr. Todd Johnson as an individual and also as an authorized legal representative of his dental practice in Saipan

```
>From: "Alan Markoff" <amp2405bcglobal.net>
>To: "Todd Johnson" <tooth_ksaipan@hotmail.com>
>Subject: Fw: SBA Loan Request
>Date: Thu, 23 Sep 2004 20:17:05 -0500
>
>MessageTodd:
>
>I received this memo from Beverly this afternoon.  I plan to attempt to
>respond to all of her requests tomorrow.  My sense is that you need to deal
>with #'s: 6, 7, 8, 9.  Any input you can give me on #12 would be helpful.
>
>I sense we are inching closer.
>
>Alan
>----- Original Message -----
>From: Beverly Fortner
>To: 'Alan Markoff'
>Sent: Thursday, September 23, 2004 5:23 PM
>Subject: SBA Loan Request
>
>
>As we discussed over the telephone, I need the following:
>1.  Complete copy of the purchase agreement.  I have a draft with
>corrections in the margins and page 4 is missing.
>2.  Please clarify the source of your equity injection of $48,400.  Since
>your CD's are already pledged, I am assuming that you will obtain from your
>IRA's.  Is that accurate?  If so, I need a copy of the most recent
>statement.
>3.  Need your corporate and personal 2003 tax returns.
>4.  As I understand it, you currently work for Monarch Dental.  What does
>Alan Markoff DDS Inc. do?  Is that an operating dental clinic?  Does it
>have any employees?
>5.  Please fax me a copy of your $125,000 life insurance policy which will
>be assigned to the loan.
>6.  Need detail of "house leases".  Based on our discussion, you will be
>assuming the "barracks" lease only.  Dr. Ronan will pay the lease on his
>residence with an increase in salary, correct?  Does the barracks have a
>deposit attached?  If so, how much?
>7.  Please give Dr. Johnson a "heads up" about the landlord subordination
>we need executed & notorized.  This document gives the Bank a first lien on
>all the business assets of Open Choice and ToothWorks and the landlord has
>to subordinate his lien to the Bank.
>8.  The "Consent to Assignment and Assumption of Lease form on page 34 of
>my copy of the purchase agreement requires the landlord to sign.  His
>signature must be notorized since he will not be signing at the Bank.
>9.  I need a copy of the title and the make, year, & model of the vehicle
>that is being purchased with the business.
>10. Will you be obtaining a P. O. Box in Saipan for the practice?  Will our
>payment notices go to your home in Houston, or to Saipan?
>11.  Please check into obtaining insurance on the business assets of the
>practice.  Usually the full amount of the loan is required, but I will see
>if loan committee will approve a difference amount.
>12.  The year to date profitability figures I have on the practices are
>significantly lower than the results in Dr. Johnson's tax returns.  Do you
>know of any reason for this?
>13.  The dental practice appraisal you sent has several pages that are
>blurred.  Does Dr. Johnson have a better copy by any chance?
>I anticipate this going to loan committee tomorrow.  I will keep you
>posted.
>Thank you.
>Beverly
>
>
>Beverly M. Fortner
>Senior Vice President
>Wallis State Bank
>(210)344-6080
>(210)344-6361 fax
>(210)862-8059 cell
>
```

Exhibit "B"